UNION PAPER–COLLAR CO. (MERSE-
ROLE v.). See Case No. 9,488.

---

## Case No. 14,395.

### UNION PAPER–COLLAR CO. v. VAN DEUSEN et al.

[10 Blatchf. 109; 5 Fish. Pat. Cas. 597; 2 O.
G. 361; Merw. Pat. Inv. 335.] [1]

Circuit Court, S. D. New York. Aug. 27, 1872. [2]

PATENTS — REISSUE — NEW ARTICLE OF MANUFAC-
TURE—PAPER COLLARS.

1. The reissued letters patent No. 1,828, grant-
ed to William E. Lockwood, as assignee, Novem-
ber 29th, 1864, for an "improvement in shirt col-
lars," the original patent, No. 11,376, having been
granted to Walter Hunt, as inventor, July 25th,
1854, the claim thereof being, "As a new manu-
facture, a shirt collar composed of paper and
muslin, or its equivalent, and polished or burnish-
ed substantially as and for the purpose describ-
ed," are not invalid, as being for an invention
different from that described in the original pat-
ent.

2. Under the language of the specification of
the original patent, such claim would have been
a proper claim in such patent. It is, therefore,
a proper and valid claim in the reissue.

3. The reissued letters patent No. 1,980, grant-
ed to William E. Lockwood, as inventor, June
6th, 1865, for "improvements in collars," the
claim thereof being, "As a new article of manu-
facture, an embossed collar or cuff, made of a
fabric composed of paper and muslin, or an equiv-
alent fabric," and reissued letters patent No.
1,981, granted to said Lockwood, as inventor,
June 6th, 1865, for "improvements in collars,"
the claim thereof being, "As a new article of
manufacture, an ornamental collar or cuff, made
of a fabric composed of paper and muslin, or of
an equivalent fabric ornamented by printing or
otherwise marking on the surface plain or col-
ored devices," the original patent, No. 23,771,
having been granted to said Lockwood, April
26th, 1859, are both of them invalid.

4. No. 1,980 does not claim any appliance or
machinery for embossing, or any process of em-
bossing, but only the result, in the embossed arti-
cle, as a new article of manufacture; and is
merely for embossing on a surface which imitates
starched linen, the starched linen collar, with its
surface embossed, having existed before, the in-
vention of the imitative surface, or of a means
of producing it, not being claimed, and the fab-
ric of paper and muslin being old. There was no
patentable novelty in the idea of embossing the
imitative surface.

　[Cited in Union Paper-Collar Co. v. Leland,
　　Case No. 14,394; Reed v. Reed, Id. 11,650;
　　Cone v. Morgan Envelope Co., Id. 3,096.]

5. No. 1,981 does not claim any machinery or
process for doing the printing, but only the result,
in the printed article, as a new article of manu-
facture; and is merely for printing plain or col-
ored devices on a surface which imitates starch-
ed linen, printing having been done before on a
smooth, white, enamelled surface, the invention
of an imitative surface, or of the means of produ-
cing it, not being claimed, and the fabric to be
printed upon being old. There was no patent-

able novelty in the idea of printing on the imita-
tive surface.

　[Cited in Milligan & Higgin Glue Co. v. Up-
　　ton, Case No. 9,607.]

6. The first claim of the reissued letters patent
No. 1,646, granted to Solomon S. Gray, as in-
ventor, March 29th, 1864, for an "improvement
in shirt collars," the original patent, No. 38,961,
having been granted to him June 23d, 1863,
namely, "The turning over of a paper, or of a
paper and cloth, collar, by a defined line, wheth-
er pressed into the material by a die or pointed
instrument, or by bending it over the edge of a
pattern or block, of the proper curve or line, sub-
stantially as described," claims a defined line,
whether straight or curved, made by the means
indicated, and is void, for want of novelty.

7. The second claim of the said Gray reissue,
namely, "Turning the part B, of a paper, or a
paper and cloth, collar, over, on to or towards
the part A, in a curved or angular line, instead
of a straight line, substantially as and for the
purpose described," embraces the third claim,
namely, "So turning over the part B, on to or
towards the part A, in the manner above describ-
ed, as that a space shall be left between the
two parts, for the purpose, and substantially in
the manner, herein described," and is void for
want of novelty, as is, also, the third claim.

8. The reissued letters patent No. 2,309, grant-
ed to James A. Woodbury, as assignee, July 10th,
1866, for an "improvement in paper shirt col-
lars," the original patent, No. 38,664, having
been granted to Andrew A. Evans, as inventor,
May 26th, 1863, the claim thereof being, "A
collar made of long fibre paper, substantially
such as is above described," are void.

9. The invention claimed is not the process of
making a paper possessing the qualities indicated,
but the making of collars out of such a paper.

10. Whatever invention there was to be made
in the premises, was an invention of the paper
possessing the described properties: and the in-
ventor of the paper is he who invents the process
of producing the paper.

11. Evans did not invent such process, and
was not entitled to a patent for the paper, or for
the collar to be made from it.

12. The first claim of letters patent, No. 56,-
737, granted to James A. Woodbury, as assignee
of Andrew A. Evans, as inventor, July 31st,
1866, for an "improvement in paper cuffs or
wristbands," namely, "As a new article of man-
ufacture, a wristband or cuff, made of long
fibre paper, substantially such as is above de-
scribed," is void, for the same reasons for which
the claim of the said reissue No, 2,309 is void.

13. The second claim of the said patent No.
56,737, namely, "Making said wristband or cuff
reversible, substantially as and for the purpose
described," was new and patentable.

[3] [Final hearing upon pleadings and proofs.
Suit brought [against Isaac Van Deusen and
others] upon the following letters patent, all
assigned to complainants: 1. Letters patent
[No. 11,376] for "improvement in shirt-col-
lars," granted to Walter Hunt, July 25, 1854;
assigned to William E. Lockwood, and reis-
sued to him in four divisions (A, B, C, and
D), which were dated as follows: Division
B, November 29, 1864, No. 1,828; division C,
February 7, 1865, No. 1,867; divisions A and
D, April 4, 1865, Nos. 1,926 and 1,927. No.
1,927 was subsequently surrendered, and reis-
sued July 10, 1866, in two divisions, A and B,

---

[1] [Reported by Hon. Samuel Blatchford, Dis-
trict Judge, and by Samuel S. Fisher, Esq., and
here compiled and reprinted by permission. The
syllabus and opinion are from 10 Blatchf. 109,
and the statement is from 5 Fish. Pat. Cas.
597. Merw. Pat. Inv. 335, contains only a par-
tial report.]

[2] [Affirmed in 23 Wall. (90 U. S.) 530.]

[3] [From 5 Fish. Pat. Cas. 597.]

Nos. 2,306 and 2,307. 2. Letters patent [No. 23,771] for "improvements in collars," granted to William E. Lockwood, April 26, 1859, and reissued June 6, 1855, in two divisions, Nos. 1,980 and 1,981. 3. Letters patent [No. 38,-664] for an "improvement in paper shirt-collars," granted to Andrew A. Evans, May 26, 1863, and reissued July 10, 1866, to James A. Woodbury, assignee, No. 2,309. 4. Letters patent for "improvement in shirt-collars," granted to Solomon S. Gray, June 23, 1863, and reissued March 29, 1864, No. 1,646. 5. Letters patent for an "improvement in paper cuffs or wristbands," granted to James A. Woodbury, as assignee of Andrew A. Evans, July 31, 1866, No. 56,737. The bill alleged the infringement of reissues Nos. 1,828, 1,867, 1,-926, 2,306, 1,980, 1,981, 2,309, 1,646, and patent No. 56,737; but, upon the hearing, all claim was abandoned as to reissues 1,867, 1,926, and 2,306.] [3]

William Whiting and Clarence A. Seward, for plaintiffs.

Joseph J. Coombs and Edmund Wetmore, for defendants.

BLATCHFORD, District Judge. The bill in this case is brought by the Union Paper Collar Company, a corporation, against Isaac Van Deusen and others, composing the co-partnership of Van Deusen, Boehmer & Co. It alleges the infringement by the defendants of the following letters patent owned by the plaintiffs: Reissued patent No. 1,646, granted to Solomon S. Gray, as inventor, March 29th, 1864, for an "improvement in shirt collars," the original patent, No. 38,961, having been granted to him June 23d, 1863; reissued patent No. 1,828, granted to William E. Lockwood, as assignee, November 29th, 1864, for "an improvement in shirt collars," the original patent, No. 11,376, having been granted to Walter Hunt, as inventor, July 25th, 1854; reissued patent No. 1,867, granted to said Lockwood, as assignee, February 7th, 1865, for an "improvement in shirt collars," the original patent being the one of July 25th, 1854, above mentioned; reissued patent No. 1,926, granted to said Lockwood, as assignee, April 4th, 1865, for an "improvement in shirt collars," the original patent being the one of July 25th, 1854, above mentioned; reissued patent No. 2,306, granted to the plaintiffs, as assignees, July 10th, 1866, for an "improvement in shirt collars," the original patent being the one of July 25th, 1854, above mentioned and a reissue thereof, No. 1,927, having been granted to said Lockwood, April 4th, 1865; reissued patent No. 2,309, granted to James A. Woodbury, as assignee, July 10th, 1866, for an "improvement in paper shirt collars," the original patent, No. 38,664, having been granted to Andrew A. Evans, as inventor, May 26th, 1863; patent No. 56,737, granted to said Woodbury, as assignee of said Evans, as inventor, July 31st, 1866, for an "improvement

in paper cuffs or wristbands;" and reissued patent, No. 1,980, and reissued patent, No. 1,981, granted to said Lockwood, as inventor, June 6th, 1865, each for "improvements in collars," the original patent, No. 23,771, having been granted to him April 26th, 1859. The defendants admit, by a written stipulation, that they have infringed each and all of the said patents set forth in the said bill, "by making, using and selling to others to be used the things therein respectively described and claimed as new." The contest is as to the validity of the patents.

At the hearing, all claim on the part of the plaintiffs in respect of reissues Nos. 1,867, 1,-926, and 2,306, of the Hunt patent, was abandoned.

In regard to reissue No. 1,828, of the Hunt patent, it is contended, by the defendants, that that reissue is for an invention different from that described, or intended to be described, in the original patent. The claim of the reissue is this: "As a new manufacture, a shirt collar composed of paper and muslin, or its equivalent, and polished or burnished substantially as and for the purpose described." The claim of the original patent was: "The above described shirt collar, made of the fabric set forth, and polished and varnished in the manner and for the purpose specified." The original specification describes the shirt collar as made of muslin, coated on both sides with paper made to adhere to it by sizing, the fabric being then polished by a burnisher, or otherwise, the collar being then cut out, and being afterwards varnished with a transparent, colorless, waterproof varnish. The specification states the object of the varnish to be, to protect the collar from the effects of moisture, and to preserve it for a much longer time from being soiled. It says, that the invention consists "in making the collars of a fabric composed of both paper and cloth, and in subsequently polishing the same by enamelling or burnishing, or in any suitable or efficient manner"; and that it further consists "in covering the collars made of the same material with a thin pellicle of transparent, colorless varnish, whereby they are rendered proof against injury from either rain or perspiration, and, when soiled, may be wiped off with a damp cloth or sponge, and restored to nearly their original whiteness." The specification of the reissue does not mention the varnishing of the collars; but it describes the mode of making them, up to and including the polishing and burnishing, in substantially the same language used in the specification of the original patent. The collar is a complete collar when made and polished or burnished. The varnishing only adds to its further useful qualities. Under the language of the specification of the original patent, the claim now found in the reissue would have been a proper claim in the original patent. It is, therefore, a proper and valid claim in the reissue; and nothing

is adduced which destroys the validity of such reissue.

The claim of reissue No. 1,980, of the Lockwood patent, is as follows: "As a new article of manufacture, an embossed collar or cuff, made of a fabric composed of paper and muslin, or an equivalent fabric." The specification defines the fabric as one "having a smooth, white, polished or enamelled surface, to represent that of starched linen." It defines the embossing to be a representation of embroidery, or of ornamentation, whereby portions of the surface are depressed and portions are in relief. It describes a mode of effecting the embossing, by taking an electrotype from a linen collar or cuff, and using it as a die, and pressing between it and a counter die a collar and cuff made of the fabric mentioned, whereby all projections, depressions, stitches and marks on the original linen collar or cuff are reproduced, and the plain surface looks like starched linen; but it states that the inventor does not confine himself to any particular appliances or machinery for embossing the fabric.

The claim of reissue No. 1,981, of the Lockwood patent, is this: "As a new article of manufacture, an ornamental collar or cuff, made of a fabric composed of paper and muslin, or of an equivalent fabric, ornamented by printing, or otherwise marking, on the surface plain or colored devices." The specification defines the fabric as one "having a smooth and polished or enamelled surface, to represent that of starched linen. It states that the inventor prints, on the exposed surface of the article cut from the fabric, "plain or colored devices, so as to impart to it an ornamental appearance, the printed designs being such, as regards color and pattern, as the manufacturer may consider best suited to the taste of the public."

It is impossible to uphold either of these reissues as valid patents. No. 1,980 is merely for embossing on a surface which imitates starched linen. The appliance or machinery for embossing is not claimed. The process of embossing is not claimed. The result, in the embossed article, is claimed, as a new article of manufacture. But, as like embossing had been done on starched linen, the result of producing such embossing on a smooth, white, polished or enamelled surface representing that of starched linen, cannot be patented as an invention, when nothing is claimed as new in the appliance, machinery or process for producing the embossing. A starched linen collar, with its surface embossed, existed before. There was nothing of patentable novelty in the idea that, the imitative surface being provided, it would be well to emboss it. The patent does not claim the invention of the imitative surface, or of any means of producing it. The fabric of paper and muslin was old.

The same observations apply to No. 1,981. It is merely for printing plain or colored devices on a surface which imitates starched

linen. No novelty in any machinery or process for doing the printing is claimed. Nothing is described in regard to any part of the apparatus or instruments for printing. The direction is simply to "print." The result, in the printed article, is claimed, as a new article of manufacture. Printing had been done before on a smooth, white, enamelled surface; and, nothing being claimed as new in the appliance, machinery or process for producing the printing, and the surface imitating starched linen being provided, there was nothing of patentable novelty in the idea of printing upon such surface. The invention of the imitative surface is not claimed, nor is any means of producing such surface claimed; and the fabric to be printed upon was old.

If experiments were necessary before an embossed or a printed collar, of the fabric and surface indicated, could be produced, resulting in overcoming difficulties which were met with, the invention really consisted in the means or process of producing the embossed or printed collar, but the specifications and the collars produced alike fail to indicate any novelty in any such means or process, or any difficulties which can be overcome by following specific methods of operation.

Calling the thing produced a new article of manufacture, confers upon it no quality of patentable novelty, when there is no such novelty in the process or instrument for producing the embossed or printed collar, and when the substance of the whole invention claimed is merely embossing or printing on a surface imitating starched linen.

The claims of reissue No. 1,646, of the Gray patent, are three in number: (1) "The turning over of a paper, or of a paper and cloth, collar, by a defined line, whether pressed into the material by a die or pointed instrument, or by bending it over the edge of a pattern or block, of the proper curve or line, substantially as described." (2) "Turning the part B. of a paper, or a paper and cloth, collar, over, on to or towards the part A, in a curved or angular line, instead of a straight line, substantially as and for the purpose described." (3) "So turning over the part B, on to or towards the part A, in the manner above described, as that a space shall be left between the two parts, for the purpose, and substantially in the manner, herein described."

In reference to the invention embodied in the first claim, the specification says: "In the making of turn over shirt collars of paper, or of cloth and paper combined, it is exceedingly difficult to fold the material so that, when turned over on the arc of a circle, it will present a regular line. This cannot be done by the eye, but must be done by a gauged line made in the material, or by a former of suitable shape, laid on the material, as a guide to turn it over by." It also says, that the best mode of securing the turning over

in the arc of a circle, is to make in the collar an impression of the curve or line on which it is to be turned over, either by means of a die pressed upon it, or by drawing a pointed instrument over it, beside or along a pattern; that, when this is done, the collar can be readily turned over on or following the indented line; that the collar may also be turned over the edge of a pattern or block of the proper curve or line; and that the effect of making the folding line the arc of a circle, instead of a straight line, is to prevent the tension of the outer circle of the collar, after the turning over is effected, from wrinkling or puckering the inner circle; and to cause the outer portion to stand off from the inner portion, so that a necktie may be inserted in the space, without causing either portion to be wrinkled or puckered by the pressure of the necktie.

It will be observed, that the claims limit the turning over to a paper, or a paper and cloth collar. Nothing is said about a linen collar. It is not stated that any difficulty exists in turning over a collar of paper, or a collar of cloth and paper, on the arc of a circle, so as to present a regular line, which does not exist in turning over a linen collar; nor is it stated that the inner part of a turnover linen collar, which is turned over in a straight line, will not wrinkle or pucker, when brought into a circular form, and the more if a necktie be inserted between the inner part and the outer part.

The third claim of the patent is entirely embraced within the second claim. One of the purposes described as to be attained by turning the one part over, on to or towards the other, in a curved or angular instead of a straight line, is, that a space shall be left between the two parts, and the leaving of the space is described as being merely the result of turning the collar over on other than a straight line. Attention may, therefore, be confined entirely to the first and second claims, for, if the second is void, the third must fall with it.

The first claim covers a defined line, whether straight or curved, made by the means indicated—either pressing a die or pointed instrument into the material, to make the line, or making the line by bending the material over the edge of a pattern or block representing the desired line. The second claim covers the turning over of the collar in a curved or angular line whether by a defined line or not, and by whatever means.

It is shown, that, for many years before Gray's invention, paper envelopes, and the tops and bottoms of paper and cardboard boxes, were produced by shapers of steel, pressed on the material, so as to produce defined lines, whereby the material could be folded. It is also shown, that, in 1856 and 1857, the collars of Walter Hunt, made of paper and cloth, were folded over a piece of metal, in a straight line—the same process spoken of in the first claim of Gray's reissue, as bending the material "over the edge of a pattern or block, of the proper curve or line." It is also shown, that, prior to Gray's invention, linen collars were ironed on blocks, with a groove in the block, so that, as the iron passed into the groove, the collar received a defined line, by which it was turned down. This evidence disposes of the first claim of the Gray reissue.

It is also proved, that before Gray's invention, paper collars were folded by laying upon the unfinished side a piece of tin, having at one edge the required curve, and pressing upward, over such curve, a part of the collar, so as to mark the line of the curve, and crease the paper, preparatory to folding it over; and that linen collars were turned over on a curved line, before Gray's invention, with the prevention of wrinkling and the affording of space for the cravat. The second claim of Gray's reissue, is, therefore, invalid.

The serious contest in this suit, is in regard to reissue No. 2,309, of the Evans patent. The specification of the reissue states, that the object of Evans was to make a paper collar in which there was no backing of woven fabric. It proceeds: "Said Evans discovered, as the result of many experiments, that, in order to produce a really good collar, the paper must possess the following qualities, viz: strength to withstand the usual wear and tear, particularly where button holes are used, without excessive thickness, such as to destroy the resemblance to a starched linen collar, and tenacity or toughness, with pliability sufficient to allow the collar to be folded upon itself, without cracking at the fold, and the pureness of color and necessary polish to make it resemble starched linen. He (said Evans) made his collars out of a paper which he produced, or caused to be produced, in which he combined these qualities, which paper was made of a long fibre, substantially, in this respect, like bank note paper, but of about the same thickness as that of an ordinary collar, and of a pure shade or color, such as to resemble starched linen. By means of the length of fibre in the material, he was enabled to obtain, from the degree of thickness above specified, a sufficient degree of strength, tenacity and pliability to make a collar practically useful for wear, without interfering with the resemblance in appearance to a linen collar. A sample of the paper which he thus found suitable and used, is shown, filed with the original application of the said Evans for his patent above referred to." The specification then describes what quality of stock should be used, and in what manner the stock should be pulped and beaten, and how the sheets should be run off and how the water should be expelled, and what tint of color should be given, and adds: "The invention of said Evans is not confined to the use of any specific proportion of hard stock, nor to any specific time or mode of long beating of the pulp, nor

any specific method of running off or uniting the sheets of pulp or of exhausting the moisture, or of giving the required tint, but it is believed that the quality of stock to be used, the process by which the length of fibre and the required shade of color are produced, will be readily understood by paper manufacturers, having regard to the above description and the purposes for which the paper is designed." From the paper, when prepared, collars are directed to be cut. The claim is: "A collar made of long fibre paper, substantially such as is above described."

The specification points out, as the invention of Evans, not the process of making a paper possessing the qualities indicated, but the making of collars out of such a paper—the discovery, that, for a good paper collar, the paper must possess those qualities. The specification states, that he "produced, or caused to be produced," such a paper, and, also, that he "found" such a paper "suitable" and "used" it. In fact, the invention indicated and claimed is, that, when a paper of the qualities set forth is found, a collar is to be made of it.

But, whatever invention there was to be made in the premises, was an invention of the paper possessing the described properties. No person can be considered an inventor of the paper, who did not invent the process for producing the paper. It is entirely clear, from the evidence, that Evans had nothing to do with the process for producing the paper. Mr. Crane and his operatives worked out that process, without any suggestions from Evans as to any parts of the process. All that Evans did was to say, that he must have a paper of a certain weight, thickness, color, strength and finish. Such a paper was produced by Mr. Crane, after many experiments as to the character of the materials used and the mode of treating them. Evans' relation to any invention in the premises is no other than what it would have been if he had found ready to his hand the desired paper, and had conceived the idea of making a collar from it. The making of the collar would not have been patentable, collars having before been made of other qualities of paper and of other materials. Charles Goodyear discovered the process for producing vulcanized india rubber, and was the first person to produce such article. He was entitled to a patent for the process and to a patent for the product. He was entitled to a patent for the product because he invented the process, and for no other reason. If he had not invented the process, he would not have been entitled to a patent for the product. If he had said to another person: "I wish to have produced from india rubber an article possessing such and such properties, and, when I procure it, I can use it for such and such purposes," and such other person had, by experiment, produced vulcanized india rubber, Charles Goodyear could not have obtained a valid patent for such product. Nor could he have obtained a valid patent for anything, as a new manufacture, to be made from such product, which had before been made, in like form and shape, from other materials. The patent to Charles Goodyear, for his product, covered the making of all such things. In the present case, the collar described in the specification, and shown in the drawings, of the reissue of Evans' patent is, in form, structure and arrangement, apart from the paper of which it is to be made, identical with collars previously made of linen, paper, and other fabrics. Evans not having invented the paper, was not entitled to a patent for it, or for the collar to be made from it.

The broad proposition is contended for by the plaintiffs, that Evans invented the paper, as a new manufacture, because he was the first to conceive the idea of having a paper combining all the qualities prescribed in the specification. It is urged, that, as he was not a paper maker, he had a right to use the trained skill of Mr. Crane and his operatives, to carry out the idea; that they were merely the instruments of Evans, in working out the invention of Evans; that, although Evans does not claim to have invented the process or the machinery for making the paper, yet he was the inventor of the paper, and could have obtained a patent for it, as an article of manufacture; and that, therefore, a patent for his invention of a collar made from such paper can be sustained. The principle sought to be applied, in the view thus urged, is a familiar one in the patent law, and properly applicable in some cases. But it has no proper application to the patent in question. Evans had nothing to do with imparting to the paper the qualities attributed to it by the specification. He merely announced to the paper maker, that he desired a paper having those qualities, to be made. If the paper maker, setting forth the process and machinery by which the paper was made, had—the paper, as combining in itself properties never before combined in a paper, being a new article of manufacture—claimed a patent for the paper, as having invented the process by which it was made, could it be said that he would not have been entitled to such patent? If not, can Evans be entitled to a patent for the paper, or to the present patent, which is really nothing else but a patent for the paper? At the very utmost, Evans could properly assert nothing more than that he and the paper-maker were joint inventors of the paper.

For these reasons, I am constrained to hold that the reissue No. 2,309 is void.

The patent of July 31st, 1866, No. 56,737, for an alleged invention of said Evans, has two claims: (1) "As a new article of manufacture, a wristband or cuff, made of long fibre paper, substantially such as is above described." (2) "Making said wristband or cuff reversible, substantially as and for the purpose described."

The specification of this patent, so far as the first claim is concerned, is, in its descriptive part, identical with the specification of the reissue No. 2,309, substituting "wristband or cuff" for "collar." The first claim is for a wristband or cuff, as a new article of manufacture, made of the paper described in the reissue No. 2,309. Wristbands and cuffs of paper, linen and other fabrics, being old, and there being nothing new or peculiar in the form or structure of the wristband or cuff embraced in the first claim, except as to the paper of which it is to be made, and Evans not having been the inventor of such paper, the first claim is invalid, for the same reasons for which the claim of the reissue No. 2,309 is void.

As to the second claim of No. 56,737, so far as the evidence discloses, it was new and patentable. The wristband or cuff shown in the drawings of the patent as being double or reversible, is so in a sense different from anything shown to have existed before. It has six button holes, three on each end, the middle and outer ones alone being necessarily in use at any one time, and the inner ones being capable of being left to be first used when the wristband or cuff is reversed. There is something new, useful and patentable in such a construction.

There must be a decree for the plaintiffs, for an injunction and an account of profits on reissue No. 1,828, and on the second claim of patent No. 56,737. The question of costs is reserved until the entering of a final decree.

[Affirmed in 23 Wall. (90 U. S.) 530.]