**HARMON PAPER CO. v. PRAGER et al.**

(Circuit Court of Appeals, Second Circuit. February 3, 1923.)

No. 133.

1. Patents ⬦328—Design patent 54,152 invalid for want of invention.

Design patent No. 54,152, for a design for wall paper, *held* invalid for seeking to cover with this patent all paper resulting from claimant's method of manufacture.

2. Patents ⬦8—"Invention" consists in new and useful means to accomplish end.

The object or end sought to be accomplished is not the subject of patent, but "invention" consists in a new and useful means of obtaining an end.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

3. Patents ⬦328—1,344,570 held invalid for want of invention.

Patent No. 1,344,570, for wall paper by the use of an old oatmeal base and an old blending stock, forming a cloud effect on a light reflecting base, *held* invalid for want of invention; the result attained being but an attractive rearrangement of old matter by old means.

Manton, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in equity by the Harmon Paper Company against James G. Prager and another, doing business as the Prager Company, for in-

fringement of patents. From a decree dismissing the bill (286 Fed. 267), the plaintiff appeals.

Suit is upon patent to Warren, 1,344,570, dated June 22, 1920 (claims 2 and 3), and also upon design patent to the same Warren, 54,152, dated November 4, 1919, whereof the claim is "the ornamental design for wall paper as shown." What is shown is printed below:

The applications for the two patents were filed the same day (August 14, 1918) and the article, substance, or device sought to be covered by both patents is the same.

The claims in suit from 1,344,570 are as follows:

"2. A wall paper having a base with a light reflecting surface broken up by wood flour, and a blending stock forming a cloud effect thereon.

"3. A wall paper having a base of paper stock mixed with a material breaking up the light-reflecting surface thereof, and also having a blending stock forming a cloud effect on the top surface of the base."

The application is for "wall paper and method of making it," but the method claim is not relied upon; patentable invention is said to reside in the thing or article described in the quoted claims as a new object of manufacture.

The patentee stated in the specification that his invention was "based on the *discovery* that a wall paper having a soft and pleasant decorative appearance, together with a texture and body making it well suited to the operation of hanging and to use as a wall covering, may be produced by flowing a thin cloudlike coating of a blending paper stock onto a paper base, the surface of which has been broken up or roughened visually by incorporating with the said surface, or with the paper base as a whole, small particles, as of wood flour of a color contrasting with the paper base, and which interrupted the otherwise smooth light-reflecting surface thereof."

The patented product as claimed by the claims in suit is thus described in the specification:

"The paper so produced [has] a cloudlike effect of visionary depth, pleasing to the eye, in that it is soft and impressionistic as a whole, rather than glaring and intensely detailed."

Other matters of fact will be referred to in the opinion. After hearing, the trial judge dismissed the bill on both patents, holding that both the claims in suit were invalid and that the design patent was (a) invalid when construed in the sense claimed by the plaintiff; and (b) if construed as valid for the pattern shown, was not infringed by defendant. Thereupon plaintiff appealed.

Pennie, Davis, Marvin & Edmonds, of New York City (William H. Davis and George E. Middleton, both of New York City, of counsel), for appellant.

Briesen & Schrenk, of New York City (Hans v. Briesen and Fred A. Klein, both of New York City, of counsel), for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] We are agreed that no error was committed in declaring the design patent void. It is asserted for plaintiff that there must be infringement, because "no ordinary observer, giving such attention as a purchaser usually gives, would notice any difference between the paper sold by defendant and that *patented* by plaintiff."

But plaintiff did not patent a wall paper, but a "design for wall paper," and the test is not to compare defendant's paper with plaintiff's paper, but with the design; if that be done, there is no infringement. But what plaintiff really seeks is to cover with this design patent all paper resulting from the method of manufacture above described. This cannot be done. North, etc., Co. v. Racine, etc., Co. (C. C. A.) 271 Fed. 936.

If it be said that the design covers all paper looking in pattern (to speak loosely) like the design (i. e. marbleized paper), and possessing "visionary depth," and also "soft and impressionistic rather than glaring," it is enough to note that no such possibilities or scope can be spelled out of the design specification. Whether it would be legally possible to procure such a design patent need not be considered. The decree is affirmed as to this patent.

A majority of this court are of opinion that the trial judge was right in declining to find invention in the claims in suit from the other patent. It is admitted that the method and means of producing wall paper responding to these claims are not now in controversy; the question is whether the article defined exhibits patentable invention.

[2] But any article or product is a result, and a claim is to be read in conjunction with its specification; it follows that solution of the question of invention, even as to a product, requires investigation of the means of production. "The end to be accomplished is not the subject of a patent. The invention consists in the new and useful means of obtaining it." Carver v. Hyde, 16 Pet. 513, 519 (10 L. Ed. 1051). This is the long-established general rule, and although what are called "product patents" are well known, their validity and scope are usually ascertained by analysis of the manner of production. Of this the leading product patent case in this circuit is a striking example. General Electric v. Laco-Phillips, 233 Fed. 96, 147 C. C. A. 166.

How this patented paper is produced, and how it came to be made, are matters certainly known from the uncontradicted evidence of the patentee. It is manufactured on and by a machine long well known, which functions in making this paper just as usual. That machine carries on its "Fourdrinier wire" a paper base equally well known and even older, which base is sprinkled with "wood flour" or ground-up wood, and over such sprinkled base moving at usual speed, is flowed a "blending paper stock" well known to the trade. But further a paper base sprinkled with wood flour had long been an article of commerce under the name "oatmeal paper," and a plain paper base flowed with blending

stock had long been another such article under various names; generically the product was "marbleized paper." What the patentee did was to flow old blending stock over oatmeal paper, and find in the product a commercial success.

It follows that the claims in suit might truthfully and accurately be compressed into one, reading thus:

"A wall paper having an old oatmeal base, and an old blending stock forming a marbleized effect thereon."

The result of thus handling old materials is to change the light effects, by changing the reflecting surface; i. e., roughening it. Optically something of the same kind may be observed by comparing a rough plaster wall when colored, with a similar wall, similarly colored, but smooth.

We may assume with plaintiff that the success of this paper is very marked, and that the "soft and impressionistic visionary depth" thereof is most pleasing to the eye; we may further assume (and here also we are agreed) that the prior wall paper art shows no paper made in exactly the same way; yet the question of fact remains whether all this reveals invention, or whether it was no more than the skill of a mechanic plus the taste of a good salesman.

[3] We find that the patentee has made an attractive rearrangement of old matter by old means, and such rearrangement has spelled commercial success. This is the best that can be said for the patent, and it is not enough.

Undoubtedly success such as is proven is evidence of invention; how potent differs with surrounding circumstances, but it never can constitute invention in and of itself. There must always be some mechanical, chemical, electrical (or the like) component in the inventive concept, some technical achievement on which to build. It may be very small, yet when viewed through the eyes of the trade or business affected, and helped by commercial success, it may attain to patentable invention. Our recent decision in Kurtz v. Belle, etc., Co., 280 Fed. 277, is an excellent example. But we think no instance can be found in the books of patentable invention found, with absolutely no mechanical (or the like) cleverness to support it.

Of course, that is a question only of fact; but here we can discover nothing but a style, a mode or fashion that caught the public fancy. The matter seems to us exactly like the so-called "paper collar cases." Collar Co. v. Van Deusen, Fed. Cas. No. 14,395, 10 Blatchf. 109, affirmed 23 Wall. 530, 23 L. Ed. 128.

As the essence of the paper collar patent was the simulation of linen, so the essence of this patent is the simulation of cloud effects; it is a patent of illusion, as was the imitation of cloth fabrics considered in Simplex, etc., v. Renfrew, 250 Fed. 863, 163 C. C. A. 177. Indeed, if the citation of the Collar Company Case be followed through the years, the thought is plainly seen that mere novelty or attractiveness of shape or form needs a substratum of some technical ingenuity to rise to patentable invention. Cf. especially McCloskey v. Du Bois (C. C.) 9 Fed. 38, and MacKay v. Jackman (C. C.) 12 Fed. 615, two well-reasoned decisions of Wheeler, J. We add that it is not without

weight that, could this patent be sustained, any other variant of paper base, wood flour and blending box, giving (if wanted) storm or sunshine or fog effects, would be equally patentable.

The foregoing renders it unnecessary to consider the point of non-infringement on the ground that defendant's paper obtains result from a bleach and not a blend. We have considered the opinion of Geiger, J., in Harmon, etc., Co. v. Kimberly Clark Co., 289 Fed. ——, and agree with his result; we have not found it necessary to dwell on the file wrapper contents.

Decree affirmed, with costs.

MANTON, Circuit Judge (dissenting). Appellant sues for infringement of patent No. 1,344,570, which is for wall paper and the method of making it. The patent was applied for August 14, 1918, and granted June 22, 1920. He also sues upon design patent No. 54,152 for wall paper granted November 4, 1919.

The first claim of the patent in suit is for the method of making the wall paper and is not involved here, for the appellee did not manufacture the infringing product but imported it from Germany. Claims 2 and 3 are for the product and read as follows:

"2. A wall paper having a base with a light reflecting surface broken up by wood flour and a blending stock forming a cloud effect thereon.

"3. A wall paper having a base of paper stock mixed with a material breaking up the light reflecting surface thereof, and also having a blending stock forming a cloud effect on the top surface of the base."

The invention relates to the method of making wall paper with cloud effects of visionary depth and the product claims refer to wall paper produced by such method. The inventor says that he has discovered a wall paper having a soft and pleasing decorative appearance together with a texture and body making it well suited to the operation of hanging and to use as a wall covering. It is produced by flowing a thin cloud-like coating of a blending paper stock onto a paper base, the surface of which has been broken up or roughened by incorporating with the said surface or with the paper base as a whole, small particles, as wood flour, of a color contrasting with the paper base and which interrupt the otherwise smooth light reflecting surface thereof. Wood flour, which is ground wood, is mixed with the base or main paper pulp stock and is flowed over the Fourdrinier wire in the way usual in such manufacture. The blending stock, finely ground and diluted with much water, is fed to a flow box mounted over the wire and flowed over the base stock while the latter is wet on the wire. There is distributed over the base by the raking action of the wood flour particles which form a cloud or mist on the finished paper. The paper is known in the trade as Harmonella. There are three elements in its manufacture. First, a base (the pulp body of the paper); second, wood flour (breaking up the light reflecting surface) and third, a blending stock (forming a cloud effect thereon). In claim 3, the wood flour is mixed with the base as in the oatmeal paper, and in claim 2, flour is flowed on the surface of the paper base. The wall papers theretofore made were made of two elements, a base and a blending stock. There

were two main classes of wall papers, one known in the trade as "plain goods" and the other as "printed or stained goods." Most of the wall papers on the market fall in the second class. There is an indefinite variety in print or stained wall papers. Oatmeal papers are made by adding coarsely ground wood, sawdust or wood flour to the paper stock before it flows out upon the Fourdrinier wire of the paper machine and the surface of the finished paper is so roughened by these little pieces of wood that an effect of softness is produced. Before the Harmonella paper, the oatmeal paper was popular. The marbleized papers are made by flowing a thin blended stock, usually white, above a plain base, usually colored, while the latter is wet upon the wire. This blend flows out upon the base stock forming large contrasting splotches upon the colored base, the result being a mottled paper resembling onyx or marble. Papers of this kind were used for wrapping and for cover paper, but they were not very successful as wall papers and the reason therefor is said to have been because it is a hard cloudy paper adapted for paneling in public halls where simulation of marble is sought, but unsuited for dwellings and because it is hard to hang. It is hard to distribute the blending stock evenly over the base with the result that when the web of paper is cut into rolls for ultimate use, the large splotches do not match and the wall is streaked or barred. The inventor has succeeded because he conceived the idea of taking a wall paper made by flowing the blend over an oatmeal base—a pulp blended oatmeal. The wood flour solved the problem and the hard cold marble paper has the appearance of the visionary depth and what is described as a "pleasant warmth." The splotches of the marbleized paper were softened and dispersed into a kind of mist upon a soft oatmeal background, with the result that the paper was better adapted for hanging. It matched in perfect harmony; there were no streaks. This result was obtained because the little particles of wood projecting from the surface of the base stock on the wire, act as rakes to pull out the fibres of the blending stock and distribute them over the face of the paper not in white splotches, but in soft cloud effect.

The manufacture of this paper has made a very marked impression upon the trade. To the outsider it may seem trivial, but in the trade, it made for great commercial success. The increase in the sale of Harmonella paper, this record disclosed, was very marked. For example, the appellant's business from June 1, 1918, to April 1, 1919, was 749,957 lbs. During the ten months period from June 1, 1921, to April 1, 1922, 3,405,451 lbs. which is an increase of five hundred per cent. in three years. In the month of March, 1922, 770,100 lbs. were sold as compared with 106,201 lbs. of oatmeal duplexes, which is the next sought for paper. Men familiar with this trade gave testimony of its unusual demand. Commercial success of this character is a criterion of invention. Smith v. Goodyear, 93 U. S. 486, 23 L. Ed. 952; Potts v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275; Mineral Separation Co. v. Hyde, 242 U. S. 261, 37 Sup. Ct. 82, 61 L. Ed. 286. This demand was not brought about through an advertising campaign. Apparently the paper sold on its merit. Nor can it be said that it was due to a fashion or caprice of the public. It has

continued and increased during a period of four years. It is more than a fashion, for fashions are not likely to last that long. I regard this as persuasive evidence of invention. Mineral Separation Co. v. Hyde, supra.

"Even the smallest invention, if it merits the title, must meet an existing want, yet that want, invoking invention, may never be apparent until some previous invention, imperfectly satisfying the more universal want, discloses the subordinate and narrower need." Kimball Co. v. Noesting Pin Ticket Co. (C. C. A.) 262 Fed. at page 149.

To view this paper in the light of one not experienced in the art, it may seem trivial and unworthy of the dignity of patent protection, but looking at it with the eyes of one engaged in this trade, the patent represents a large and successful business. To them it is of the utmost importance. No one before satisfied this want and it has been done in simplicity and now has the compliment paid to it of imitation by others. Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 Fed. 282. I think that the patent is valid unless evidence of the prior art defeats it.

As evidence of prior use, four papers were offered in evidence. The Columbia duplexes were the only ones employed as wall papers; the others were not. The duplexes were similar to marbleized paper and when offered for sale as wall coverings were not accepted. They were sold before the war and after that were not used. Three patents of the prior art were offered. The first was the British patent to Imray, No. 6849 of 1904. The problem of that patent was to distribute the blend and to produce a separate marble paper by causing the blend pulp to move in a serpentine path to a distributing point and thence down an inclined plate and down to the wet paper base on the wires. This resulted in a marble paper, so-called. The paper onto which the blend is flowed is a plain base on mixed woodflour. The Waite & Walker patent shows an effort on the problem of distributing the blend. The inventor did not use wood flour in the base to do it, and he did not get the three-fold Harmonella effect. It was not a wall paper. The German patent to Lutz, No. 190,347 was for making a paper having a fixed design applied in pulp by means of a stencil cylinder. It is a two-ply paper, one of the plies being broken up into a figured design. By means of the stencil cylinder, definite sharp-edged pulp patterns were applied upon a wire screen. There is no blend corresponding to the blend as used in making the Harmonella and there is no flowing and no raking. It does not use the wood flour in connection with a pulp blend. It appears that these prior patents to Imray and Waite & Walker were cited in the Patent Office and the patent was granted over them. Therefore, a strong presumption of validity arises, from the granting of the patent after the rejection of these references to previous patents, which accompanies the effort to sustain the patent in suit when the same is attacked. Canda et al. v. Michigan Iron Co., 124 Fed. 486, 61 C. C. A. 194. I can find nothing in the prior art which anticipated the patent in suit.

The appellee admits the sale of samples claimed to be the infringing product. An inspection of them satisfactorily demonstrates that there

is a copying of the appellant's product. The evidence sufficiently shows that there is an infringement of this product.

I concur in the result in the majority opinion holding that the design patent is invalid. For the reasons above stated, I dissent from that part of the opinion holding patent No. 1,344,570 invalid and think the judgment should be modified accordingly.