**UNITED STATES INDUSTRIAL CHEMICAL CO., Inc., et al. v. THEROZ CO.**

Circuit Court of Appeals, Fourth Circuit.
April 10, 1928.

No. 2607.

1. Patents ⬥328—1,313,878, relating to solid alcohol fuel, held invalid for lack of invention.

Brigham patent, 1,313,878, relating to solid alcohol fuel, held invalid for lack of patentable novelty.

2. Patents ⬥328—1,262,267 and 1,262,268, for solid alcohol fuel and process, held valid, unanticipated, and infringed.

Schaub patents, 1,262,267 and 1,262,268, for solid alcohol fuel and process for solidifying it, held valid, unanticipated, and infringed.

3. Appeal and error ⬥1011(1)—Trial court's findings on conflicting evidence will not be disturbed, unless he misapprehended evidence or went against clear weight thereof.

Findings of trial judge on conflicting evidence will not be disturbed on appeal, unless appellate court is satisfied that he misapprehended the evidence or went against a clear weight thereof.

4. Patents ⬥16—That inventor did not understand scientific principles underlying invention does not affect his right to patent.

That inventor did not understand scientific principles, theories, or natural laws underlying his invention does not affect his right to patent.

5. Patents ⬥18—Simplicity of process held not to show it was obvious, nor negative right to patent thereon.

Apparent simplicity of patented process held not to show that it was obvious, nor negative right to patent therefor.

6. Patents ⬥26(1¼, 2)—"Combination" is patentable, if it produces new and useful result, or old result in more advantageous way.

A "combination" is a composition of old or new elements, and it is patentable, if it produces new and useful results, though all its constituents were well known and in common use before it was made, provided the results are a product of the combination, and not a mere aggregate of several results, if it produces a different force, effect, or result in the combined forces or processes from that given by their separate parts, or if the elements of which it is composed produce by their joint action a new and useful result, or an old result in a cheaper or otherwise more advantageous way.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Combination—Combine.]

7. Patents ⬥118—Specifications in claims are sufficient if persons skilled in art are enabled to produce patented article.

Claims of a process patent are sufficient, if the specifications and terms used therein are sufficiently definite to guide those skilled in the art to enable them to produce the patented article.

8. Patents ⬥157(1)—Patents substantially advancing art are to be liberally construed.

Patents covering a useful discovery, which substantially advances the art, are to be liberally construed.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Patent infringement suit by the Theroz Company against the United States Industrial Chemical Company, Inc., and another. From the decree (14 F.[2d] 629), all parties appeal. Affirmed.

Frederic P. Warfield, Lawrence Bristol, and Charles E. Hughes, all of New York City (Hersey Egginton and G. Willard Rich, both of New York City, on the brief), for appellants and cross-appellees.

Livingston Gifford, of New York City (Gifford & Scull and Newton A. Burgess, all of New York City, on the brief), for appellee and cross-appellant.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge. The Theroz Company, as assignee of letters patent Nos. 1,262,267 and 1,262,268, issued to Jacob Schaub, and 1,313,878, issued to Henry M. Brigham, brought this suit against the Unit-

ed States Industrial Chemical Company, Inc., and the Sterno Corporation, for infringement of these patents. The defendants pleaded anticipation and lack of invention, and denied infringement. The District Court held the two Schaub patents valid and infringed, and referred the case to a master for an accounting. The Brigham patent was held void, on the ground that it was anticipated by the Schaub patents. All parties have appealed.

The patents in suit cover an artificial fuel, the principal constituents of which are alcohol and nitrocellulose, and also the process by which it is made. This fuel is one of the products popularly known as solid alcohol, and is produced by dissolving nitrocellulose in commercial methyl alcohol, which contains acetone, thickening the resulting colloid by the addition of commercial ethyl alcohol, which contains water, and then coagulating or jellifying it by the injection of tiny streamlets of water, or of commercial ethyl alcohol containing water. The difference between the two Schaub patents is that No. 1,262,267 prescribes the use of ethyl alcohol as a thickener and as a coagulant, whereas in No. 1,262,268 water is used as a coagulant and no ethyl alcohol whatever is used.

[1] The Brigham patent, which was obtained some time after the Schaub patents by the attorney who represented Schaub, prescribes the use of dehydrated ethyl alcohol and acetone as a solvent of the nitrocellulose, and of water or a mixture of water and commercial ethyl alcohol as a coagulant. Manifestly the only difference between this method and that of the Schaub patents consists in the use of dehydrated ethyl alcohol and acetone, instead of commercial methyl alcohol, as a solvent; but, as this was merely the substitution of known equivalents well-recognized as such in the art, there was no novelty in the Brigham patent, and the learned District Judge properly held it void for that reason. Crouch v. Roemer, 103 U. S. 797, 799, 26 L. Ed. 426; Smith v. Nichols, 21 Wall. (88 U. S.) 112, 119.[1] The cross-appeal deals only with the validity of this patent, and need not be further considered.

[2] The first question for our consideration on the appeal proper is the validity of the Schaub patents, which defendants assail as being void for lack of novelty and invention generally, and specifically because of anticipation. This involves, of course, a consideration of the prior art, the knowledge, achievements, and progress of which are accurately and painstakingly set forth in the opinion of the District Judge (14 F.[2d] 629), and need not be repeated here. It is

sufficient to say that the prior art in the solid alcohol industry disclosed two classes of products: (1) A spongy soap, containing alcohol in its pores; and (2) a mixture of alcohol, ether, and nitrocellulose, formed by dissolving the nitrocellulose in alcohol and ether, and solidifying the colloid thus formed by evaporating a part of the ether.

Belonging to the first class of products was the "Sterno" or "canned heat" manufactured and sold by the defendant Sterno Corporation during the years 1914 to 1920, and until that corporation began to infringe the patents of complainant. This soap product, however, was subject to a number of objections. The soap would melt during combustion, and the alcohol would spread, producing extended flames, which were offensive and dangerous. After combustion, there would be an objectionable residue. And, if the product were kept for any considerable length of time, dessication would take place, resulting in loss of weight and combustibility. To obviate these objections the ether-evaporation process was tried, but was never successful. It involved a considerable fire hazard and was entirely too expensive, because of the loss of ether, which was evaporated to bring about solidification of the remainder of the mixture. The product itself was objectionable, as it gave off the odor of ether while burning, and contained enough ether with the alcohol to make it not entirely free from danger. As stated, this ether evaporation process was never successful; and, although defendants purchased the Poulton patent covering the process, they never attempted to make use of it, but continued to manufacture the unsatisfactory soap product until the adoption of the infringing process involved in this suit.

It is manifest, we think, that the inventions of Schaub were not anticipated, either by the soap product or by the product of the ether-evaporation process. His product differs from the soap product, in that, instead of the fusible and noncombustible soap, it has a framework of nitrocellulose, which is combustible and leaves no residue. It differs from the product of the ether-evaporation process, in that it contains no ether and gives off no ordor of ether when burning. The process of manufacture, which is also covered by the patents, differs radically from the processes used in manufacturing the other products. The difference between it and the process used in producing the soap product is so obvious as not to require comment. The ether-evaporation process is also radically different. Although in this process methyl alcohol containing acetone is used as a

1 22 L. Ed. 566.

solvent of the nitrocellulose, ether is also an essential ingredient of the mixture; and coagulation is secured, not by the addition of water, or of commercial ethyl alcohol containing water, but by evaporation of the ether, which, as stated above, is a dangerous, expensive, and commercially impractical method. Schaub's product and the process by which it is produced, therefore, is not merely an improvement over prior products and methods, but both the product and the process are radically different from and greatly superior to anything theretofore known in the industry.

Defendants rely also upon the process of the Haddon British patent of 1907 as an anticipation of the inventions covered by the Schaub patents; but this contention in manifestly unsound. Although the process of the Haddon patent involved dissolving nitrocellulose in methyl alcohol, and coagulating the colloid thus formed by the use of water or ethyl alcohol containing water, it was used, not to produce a fuel in which the alcohol would be retained in the pores of a nitrocellulose structure, but to produce a strand of artificial silk from which all alcohol would be eliminated. The problem with which it dealt was the direct antithesis of that in the solid alcohol industry. What was desired there was to obtain a filament or thread of nitrocellulose, from which all liquid which had been used in its dissolution should be eliminated. Here the problem was to coagulate the nitrocellulose as a framework in such a way as to retain as much liquid as possible.

It was not a new discovery in either invention that nitrocellulose could be dissolved in commercial methyl alcohol containing acetone. Nor was it new that nitrocellulose thus dissolved could be coagulated by the use of water, or of ethyl alcohol containing water. What was new in the Haddon patent was the silk-like thread produced from nitrocellulose and the process by which it was produced. What is new in the Schaub patents is the artificial fuel having a nitrocellulose framework, which contains in its pores and pockets nothing but alcohol (plus only the minute quantity of water contained in commercial alcohol), and the process by which this artificial fuel is produced. The only similarity in the processes is that they depend upon the same natural laws and the same qualities of the ingredients used; but, of course, this does not render one an anticipation of the other. No one is given a patent on natural laws or on the chemical properties of matter. The products of the patents are en-

tirely different. The processes are entirely different. And complete knowledge of all the disclosures of the Haddon patent would not have suggested the product or the process of the Schaub patents.

Passing from the contentions as to anticipation, we come to the broader contentions of lack of novelty and invention upon which defendants chiefly rely. Here defendants make two contentions: (1) That Schaub obtained a patent on information given him by employees of the Du Pont Company embodying knowledge familiar to the industry; and (2) that the patents embrace merely the operation of well-understood natural laws and matters which were of common knowledge in the art.

The first of these contentions was examined very minutely by the learned District Judge, who arrived at the conclusion that the Schaub patents were not based upon information furnished by the Du Pont employees, but upon experiments conducted by Schaub and discoveries made in the course of these experiments. See 14 F.(2d) at 633 and 634. We have considered the evidence carefully and we find ourselves in accord with his conclusion regarding the matter. Aside from the testimony of Schaub as to his experiments and discoveries and the corroborating evidence offered to sustain him, it appears that the Du Pont Company itself was at the time engaged in an attempt to produce a commercially practical solid alcohol, and was experimenting on a method for producing same which it subsequently abandoned as a failure. This would seem to effectually negative the theory that a successful method for accomplishing the desired result was a matter of common knowledge to its employees.

[3] There was considerable conflict in the testimony, or in the inferences to be drawn therefrom, as to what assistance was rendered Schaub by these Du Pont employees, who were sent to assist him in experiments which he was making with a nitrocellulose solution purchased from the Du Pont Company; but the trial judge saw and heard the witnesses, and his findings on the evidence ought not be disturbed, unless we are satisfied that he misapprehended the evidence or went against the clear weight thereof. U. S. v. United Shoe Machinery Co., 247 U. S. 32, 41, 38 S. Ct. 473, 62 L. Ed. 968; Adamson v. Gilliland, 242 U. S. 350, 137 S. Ct. 169, 61 L. Ed. 356; Wolf Mineral Process Corporation v. Minerals Separation North American Corporation (C.•C. A. 4th) 18 F. (2d) 483; International Organization, Unit-

ed Mine Workers of America, v. Red Jacket Consolidated Coal & Coke Co. (C. C. A. 4th) 18 F.(2d) 839.

[4] Defendants make much in their brief of Schaub's ignorance with respect to the fact.that it is the acetone contained in commercial methyl alcohol which is the solvent of nitrocellulose and that it is the water contained in commercial ethyl alcohol which is the coagulant. But we are not impressed with this argument. Schaub was experimenting with alcohol of the commercial grades; and if, through such experiments, he discovered a way to attain the result which he was seeking, and correctly described it in his application for a patent, it makes no difference whether or not he understood the chemical theory or the natural laws underlying the process. A partial enumeration of the great inventions and discoveries which have involved the use of forces and elements not understood by the inventors themselves would unduly lengthen this opinion. And if it be true that Schaub stumbled upon an important invention without understanding the reasons for what he had accomplished, it will not have been the first time that truth has been withheld from the wise and learned and revealed to the humble seeker. What was said by Mr. Justice McKenna, speaking for the Supreme Court in Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 435, 436, 31 S. Ct. 444, 447 (55 L. Ed. 527), is a sufficient answer to this position of defendants. Said he:

"A patentee may be baldly empirical, seeing nothing beyond his experiments and the result; yet, if he has added a new and valuable article. to the world's utilities, he is entitled to the rank and protection of an inventor. And how can it take from his merit that he may not know all of the forces which he has brought into operation? It is certainly not necessary that he understand or be able to state the scientific principles underlying his invention, and it is immaterial whether he can stand a successful examination as to the speculative ideas involved [citing cases]. He must, indeed, make such disclosure and description of his invention that it may be put into practice. In this he must be clear. He must not put forth a puzzle for invention or experiment to solve, but the description is sufficient if those skilled in the art can understand it. This satisfies the law, which only requires as a condition of its protection that the world be given something new and that the world be taught how to use it. It is no concern of the world whether the principle upon which the new construc-

tion acts be obvious or obscure, so that it inheres in the new construction."

We come, then, to the contention that the Schaub patents are void for lack of invention, because they embrace merely matters which were of common knowledge in the art and which involve merely the application of well-understood natural laws. This contention is based upon the fact that it was well known that nitrocellulose could be dissolved in commercial methyl alcohol containing acetone, and that water or ethyl alcohol containing water was a coagulant of the nitrocellulose contained in such a solution. But the answer to this contention is that it was not known that by injecting water, or ethyl alcohol containing water, in a number of minute streamlets into the colloid formed of nitrocellulose dissolved in alcohol, the colloid could be coagulated in such a way that the alcohol would be contained in the pores and pockets of a nitrocellulose framework or structure. This was what Schaub accomplished, and herein lies his invention. His patents, of course, do not give him the right to monopolize the mere dissolving of nitrocellulose by the use of acetone, or of methyl alcohol containing acetone. Neither do they give him a monopoly upon the coagulation of the colloid thus formed by water, or ethyl alcohol containing water. These were the things which were known in the prior art. What they do give him a monopoly on is the process of making a solid alcohol fuel by the process which he invented; that is to say, by taking a colloid in which nitrocellulose had been dissolved by the use of methyl alcohol containing acetone and coagulating it by injecting tiny streamlets of water, or of ethyl alcohol containing water, in such a way that they will permeate every portion of the colloid and produce a porous nitrocellulose framework in which the alcohol will be contained.

[5] It is said the injection of the water in the manner prescribed by the Schaub patents, or as is done by defendants, is an obvious and simple matter, and does not entitle Schaub to a patent. It may appear obvious and simple now that Schaub has taught the world how to do it; but the question is, Was it simple or obvious before it was done? Thousands of dollars had been spent and countless experiments had been performed in fruitless endeavors to accomplish the result which Schaub accomplished; and if the method which he adopted was simple and obvious, it seems that the defendants would have adopted it, instead of continuing to manufacture the admittedly inferior soap

product, and instead of buying a patent involving the use of the dangerous and expensive ether-evaporation process. The answer, of course, is that the process of the Schaub patents was not obvious; and, to quote again from the opinion of the Supreme Court in the case of Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 434, 435, 31 S. Ct. 444, 447 (55 L. Ed. 527):

"Its simplicity should not blind us as to its character. Many things, and the patent law abounds in illustrations, seem obvious after they have been done, and, 'in the light of the accomplished result,' it is often a matter of wonder how they so long 'eluded the search of the discoverer and set at defiance the speculations of inventive genius.' Pearl v. Ocean Mills, Fed. Cas. No. 10,876, 11 Off. Gaz. 2. Knowledge after the event is always easy, and problems once solved present no difficulties, indeed, may be represented as never having had any, and expert witnesses may be brought forward to show that the new thing which seemed to have eluded the search of the world was always ready at hand and easy to be seen by a merely skillful attention."

The process of Schaub involves more than the adoption of an ordinary spraying process for mixing water with the colloid. There was nothing novel, of course, in spraying water. It was novel, however, to spray or inject water, or ethyl alcohol containing water, in tiny streamlets into a colloid composed of nitrocellulose dissolved in methyl alcohol in the peculiar manner necessary to produce a coagulation which would give a nitrocellulose framework in the pores and pockets of which the alcohol would be contained. In other words, the dissolving of nitrocellulose by the use of methyl alcohol was old. The coagulation of nitrocellulose so dissolved by water or ethyl alcohol containing water was old. The use of a spray in other processes was, of course, old. But the use of the three together in a process for producing a fuel in which alcohol would be contained in the pores and pockets of the coagulated nitrocellulose framework was new, and the product resulting from the use of the process was also new.

The problem which Schaub had to solve was to produce an artificial fuel, which would retain all the liquids as well as solids used in its production, and which would be completely consumed in combustion. Nitrocellulose was the obvious solid, and alcohol was the obvious liquid, to use in such a fuel, if they could be combined; but up to that time it had not been discovered how to combine them in a solid, except by the impractical ether-evaporation process. Schaub succeeded in evolving a process in which the use of ether was eliminated, and all of the solids and liquids used were retained in the final product, which was completely combustible. His process was not simple, but involved a number of distinct operations. First, the nitrocellulose, which was to serve as a framework of the product, was to be dissolved in methyl alcohol, which was one of the liquids desired. The resulting colloid was to be thickened by the addition of ethyl alcohol, another of the liquids desired. The colloid was then to be coagulated by the injection of tiny streamlets of water, or ethyl alcohol containing water. The importance of this last step in the process is apparent, when it is remembered that the effect of the coagulant is to solidify almost immediately that part of the colloid with which it first comes in contact, and thus surround itself with a solid wall and thereby limit its effect. To overcome this tendency it was necessary that the coagulant be carried into every part of the colloid simultaneously, and this was accomplished by the use of the tiny tubes or pipes injecting the coagulant in a flowing column of the colloid. To say that Schaub has accomplished nothing is absurd. He has given the world a new product, by devising a process which had never been employed prior to the time that he employed it. To see that, in the discovery of this new fuel and the process by which it may be produced, he has invented something new and useful, requires only that we apply the "acid test of common sense" suggested in the brief of defendants.

[6] The principles of law applicable are elementary and are well stated, with citation of the supporting authorities, in 20 R. C. L. pp. 1125, 1126, as follows:

"A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposite instrument. The authorities establish the following propositions respecting the patentability of devices or processes of this character: (1) That a combination is patentable if it produces new and useful results, though all its constituents were well known and in common use before it was made, provided the results are a product of the combination, and not a mere aggregate of several results, each the product of one of the combined elements. (2) If it produces a different force, effect, or result in the combined forces or processes from

that given by their separate parts, and a new result is given by their union. (3) If it either forms a new machine of distinct character or formation, or produces a result which is not the mere aggregate of separate contributions, but is due to the joint and co-operating action of all the elements. (4) When the several elements of which it is composed produce by their joint action either a new and useful result, or an old result in a cheaper or otherwise more advantageous way."

The patentability of Schaub's invention is supported by every criterion here laid down. First, it produces a new and useful result, and this result is a product of the combination, and not the mere aggregate of several results; second, it produces a different result in the combined forces or processes from that given by their separate parts, and a new result is given by their union; third, it produces a result which is not the mere aggregate of separate contributions, but is due to the joint and co-operating action of all the elements; and, fourth, the several elements of which the potential product is composed produce by their joint action a new and useful result.

[7, 8] We have considered defendants' contention as to the insufficiency of the claims of the Schaub patents to protect the process of complainants; but we think that these contentions are without merit. The specifications and the terms used in the claims are sufficiently definite to guide those skilled in the art and to enable them to produce the patented article, and this is all that is required. Eames v. Andrews, 122 U. S. 40, 55, 7 S. Ct. 1073, 30 L. Ed. 1064; Minerals Separation Co. v. Hyde, 242 U. S. 261, 271, 37 S. Ct. 82, 61 L. Ed. 286; Eibel Process Co. v. Paper Co., 261 U. S. 45, 65, 43 S. Ct. 322, 67 L. Ed. 523. Schaub made a useful discovery which substantially advanced the art and his patents are to be liberally construed. Eibel Process Co. v. Paper Co., supra; Winans v. Denmead, 15 How. 341, 14 L. Ed. 717.

Coming, then, to the question of infringement, we think there can be no doubt that both as to product and process the Schaub patents are infringed by the product and process of defendants. Indeed the fact that defendants have followed Schaub's process so slavishly is further proof, if further proof were needed, of the element of invention contained therein. Schaub dissolves nitrocellulose in commercial methyl alcohol containing acetone and adds ethyl alcohol. Defendants dissolve the nitrocellulose in dehydrat-ed ethyl alcohol to which methyl alcohol containing acetone or acetone itself is added. As it is well known that acetone is the solvent of nitrocellulose, defendants are merely using known equivalents, even in the matter of the dissolution of the nitrocellulose. See Fuller v. Yentzer, 94 U. S. 288, 297, 24 L. Ed. 103. As a coagulant, Schaub injects water or ethyl alcohol containing water.

Defendants, having already added dehydrated ethyl alcohol, i. e., ethyl alcohol without water, inject only the water. Schaub, in order to bring the coagulant into contact with every part of the colloid, so that it will thoroughly and quickly permeate it, injects the coagulant through tiny pipes projected into a flowing column of the colloid, so that every part of the column may be reached by the tiny streamlets of the coagulant flowing in the same direction with the column. Defendants do not use the tiny pipes, but squirt the coagulant under pressure in tiny streamlets into small cans of the colloid. This process in nature and result is substantially the same as that used by Schaub. The fact that, after attempting to buy the Schaub patents from complainant and failing to do so, defendants, in adopting the infringing method, could think of no way of mixing water with the colloid, so as to produce the desired result, except a method which is substantially the same as that used by Schaub, is proof, not only of infringement, but also that the mixing of water with the colloid, so as to produce the kind of coagulation desired, was not such a simple matter as defendants would have it appear.

Defendants insist that they are not guilty of infringement, because they say that the nitrocellulose which they use is dissolved by the ethyl alcohol, and that methyl alcohol is used merely as a denaturant because of governmental requirement. Without deciding whether they would or would not be guilty of infringement, if it should appear that the nitrocellulose used by them was in fact dissolved by the ethyl alcohol alone, and that the methyl alcohol was added merely as a denaturant, we agree with the judge below that they have not shown this. It appears, on the contrary, that they have added acetone to their dissolving solution in quantities above the amount required by the government for denaturing purposes, and the analysis of their product clearly shows the use of methyl alcohol and acetone in proportions too great to be explained on the theory of their use as denaturants alone.

A number of minor contentions were

made by defendants, all of which we have carefully examined but find to be without merit. There was no error, and the decree of the District Court is affirmed.

Affirmed.