## ROKAP CORPORATION v. LAMM et al.
### No. 2163.

District Court, D. Maryland.

March 1, 1935.

Joseph Wase, of Baltimore, Md., and A. D. Caesar and C. W. Rivise, both of Philadelphia, Pa., for plaintiff.

Emanuel E. Ottenheimer, of Baltimore, Md., Samuel E. Darby, Jr., of New York City, and Herbert J. Jacobi (of Jacobi & Jacobi), of Washington, D. C., for defendants.

CHESNUT, District Judge.

This case presents a suit in equity for alleged patent infringement in the usual form. The patent involved, No. 1,830,768, was issued November 10, 1931, to Isaac M. Rod, of Dublin, Pennsylvania, on application filed January 5, 1927, and has been assigned to the plaintiff corporation, which was formed by the patentee, Rod, and one Kaplan. The patent is a method and product, and not a machine, patent. It contains nine claims of which Nos. 4 and 8 are selected by the plaintiff as illustrative of all, No. 4 being a claim for the product and No. 8 for the method of producing it. It is of exceedingly limited scope, comprising a particular method of stitching the inner lining of the waist band of trousers to the outside cloth and the intermediate canvas, which constitutes a stiffening fabric. The particular stitch which is used to accomplish this result is applied by a machine and is known as a "zig zag" stitch. This form of stitch is, however, old in the art of garment making generally and also particularly in the making of waist bands for trousers. The alleged novelty of the plaintiff's invention is, therefore, even more limited than the use of the zig zag stitch itself, and is said to consist in the special application of said stitch to the fabrics whereby one stroke of the needle of the machine pierces all three layers of the fabric, to wit, the exterior cloth, the intermediate canvas and the interior lining, while the succeeding or alternate stroke of the needle pierces only two layers of the fabric, that is, the cloth and the canvas but not the lining. The result is that the loop of the thread formed by the alternate stitches of the needle is shown only on the inside of the waist band of the trousers and extends from a point near the top of the lining into the overturned edge of the cloth. The peculiar advantages

claimed for this particular application of the well-known zig zag stitch is said to be that it simulates a hand sewn garment and also has certain advantages in utility and wearing qualities.

The individual defendant, Jacob C. Lamm, is also the chief proprietor of the defendant corporation which is successor to the individual business. The defendant corporation is engaged in Baltimore in a large and substantial way in the manufacture of trousers and the business as conducted formerly by the individual and now by the corporation has been continuously in existence for twenty years or more. It is alleged in the bill that the corporation was formed for the evasive purpose of escaping the liabilities of the individual arising from an infringement of the patent but the evidence fails to support the charge. The plaintiff corporation is not itself engaged in the business of manufacturing trousers, but has extensively canvassed such manufacturers to accept licenses under its patent for annual charges, and many have done so. The plaintiff offered a license to the defendant on the basis of an annual payment of $100, which the defendant declined to accept. The defendant does not deny that it produces garments made in accordance with the method described in the plaintiff's patent but contends that the patent is invalid for the following reasons: (1) *anticipation and want of invention;* (2) *that it is a mere aggregation;* and (3) *prior use by the defendant.*

After a consideration of the testimony and arguments of counsel, I have reached the conclusion that the plaintiff's patent is invalid for all these reasons. To be entitled to receive a patent the inventor's discovery must be of something new and useful and not previously known or used by others (35 USCA § 31). The testimony in the case convinces me that the plaintiff's alleged invention does not meet these requirements.

The exceedingly narrow scope of the plaintiff's claimed invention will be seen from a brief statement of the prior art and examination of the file wrapper of the patent. For many years the construction of waist bands for trousers has included three plies of material, consisting of the cloth of the garment, a layer of canvas which acts as a stiffener, and a thin lining material. There have been two well-known methods of uniting these three materials to form the edging of the topmost portion of the waist band. One method is to sew the edges together by machine stitching and the other consists of an initial sewing together by machine or by hand, but finishing the sewing of the lining to the cloth by hand. The "machine finish" method is relatively inexpensive but produces less satisfactory results in appearance and wear than the hand finished garment. In the machine method the usual operation is to separately superimpose the lining and the canvas upon the outer surface of the cloth, with the edges of the three plies aligned with each other and the three layers of material were then stitched together along the edges; and then the three layers were reversed so that the canvas was positioned between the cloth and the lining with the result that the seam caused by the machine stitching was concealed from view, and the waist band then pressed to make as thin an edge as possible. The disadvantage of this method was that in result the top edging was relatively thick and bulky and not always with a well defined and uniformly straight edge due to the fact that the edge of the garment so formed comprised six layers of material, each of the three plies having been once folded over in the operation. The resulting relative bulkiness was due largely to the fact that the stiffening material was necessarily folded over along with the cloth and lining. This doubling of the thickness of the canvas was avoided in the hand sewn method in which the operation consisted in first turning over the edge of the cloth, then superimposing the single ply of canvas and inserting the free or unturned edge thereof under the overlapping edge of the cloth, sewing together the canvas and the cloth at the edge so that the stitches would not appear on the outside of the garment when finished, then placing the lining with an inturned edge on the cloth and canvas so that the inturned edge of the lining would be placed only very slightly below the top of the inturned edge of the cloth, and then sewing by hand the lining to the inturned edge of the cloth so that the loops of the thread formed by the stitches of the needle would not be visible on the outside of the finished trousers. In the use of either method the canvas and the lining were also stitched together at a lower point for neatness and durability. It will be noted that in the hand sewn operation the edge of the waist band thus formed is composed of five and not six plies of material, as the canvas is at no place overlapped but consists of a single thickness of the material,

overlapped by the cloth and underlying the lining.

The stated object of the plaintiff's patent was to provide a method whereby the advantages of the hand sewn garment could be preserved in the less expensive machine operation. The plaintiff's method of accomplishing this result as indicated in the patent is to feed the three layers of material to a "zig zag" sewing machine, in such arrangement that the overturned edge of the cloth, overlapping the free (that is, unturned) edge of the canvas, with the inturned edge of the lining superimposed on the overlapping edge of the cloth will be all three stitched together by the zig zag machine in one operation. The characteristic feature of the zig zag stitch is that the loops of the thread resulting from the alternate strokes of the needle give a diagonal effect in relation to the union of the lining with the cloth, similar in appearance to hand sewing.

It is not claimed by the plaintiff that there is any novelty in the use of the zig zag sewing machine in the construction of garments generally or waist bands for trousers particularly. And it is also apparent that there is no novelty in the final arrangement of the materials constituting the waist band in the plaintiff's method. The latter differs from the hand sewn method only in omitting the first operation of sewing the cloth to the canvas, and a zig zag sewing machine is substituted for the manual operation of sewing the lining to the cloth. The machine itself is not patented, and it is very doubtful indeed whether the elimination of the first sewing operation could constitute a patentable invention either in a method patent or a machine patent. But however that may be, the claims of the plaintiff's patent are not based on this difference between the hand sewn method and the plaintiff's machine method, but, as was initially pointed out, on the particular form of application of the zig zag stitch to the combined materials. This will appear more clearly upon examination of the file wrapper of the patent.

Claim 4 of the plaintiff's patent reads as follows:

"4. A garment edging comprising a body fabric ply and a lining fabric ply having inturned juxtaposed edges, the edge of said body ply extending slightly beyond the edge of said lining ply, a ply of stiffening fabric between said body and lining plies, and extending under and supporting the inturned edge of said body, and a row of zig zag stitches connecting the inturned portion of the edge of said body ply with said stiffening ply and the inturned edge of said lining ply, said row of zig zag stitches being visible from the lining side of edging and invisible from the outside thereof *and stitches aforesaid alternately engaging one of said inturned edges to said stiffening fabric and both of said inturned edges to said stiffening fabric.*"

It will be noted that the concluding clause of the claim has been underlined. In the original patent application the claim as made did not contain this clause, and was rejected by the Examiner because anticipated by prior patents specifically referred to, with special emphasis on Kaplan No. 875,354 (1907). The applicant met this rejection by adding to Claim 4 the underlined language. Claim 8 also relied on here reads as follows:

"8. The method of forming a garment edging which comprises lapping a plurality of fabrics and a stiffener, alternately stitching through both said fabrics and said stiffener, and then through but one of said fabrics and said stiffener, and folding one of said fabrics relatively to said stiffener."

This claim did not at first appear in the patent application but was added after preliminary rejection of other claims, (and originally numbered 13) and was at first rejected by the Examiner on Kirschner No. 1,453,506 (1920), in view of either Kaplan or Waxman No. 1,647,761 (1927). But the applicant apparently overcame the objection by the argument that the Examiner's reference against the claim did not include "any provision for alternately stitching through the stiffener and both of the fabrics and then through the stiffener and but one of the fabrics, consequently this claim involves much more than the substitution of the zig zag stitch of Kirschner."

This narrowing of the claims in the Patent Office is highly significant here. In Smith v. Snow, 55 S. Ct. 279, 284, 79 L. Ed. ——, decided by the Supreme Court Jan. 7, 1935, Mr. Justice Stone said:

"It is a familiar rule that a patentee cannot broaden his claim by dropping from it an element which he was compelled to add in order to secure his patent. I. T. S. Rubber Co. v. Essex Rubber Co., 272 U. S. 429, 443, 47 S. Ct. 136, 71 L. Ed. 335; Smith v. Magic City Club, 282 U. S. 784, 789, 790, 51 S. Ct. 291, 75 L. Ed. 707." See also Keystone Driller Co. v. Northwest Eng. Corp.,

55 S. Ct. 262, 79 L. Ed. ——, decided by the Supreme Court January 7, 1935.

It thus appears that the only patentable difference from the prior art, on the basis of which allowance of the patent was made by the Patent Office, consists in the peculiarity of application of the zig zag stitch whereby one stroke of the needle engages all three fabrics, cloth, canvas and lining, and the alternate stroke engages only the canvas and the cloth. It will be observed that this method of sewing the lining to the cloth differs from the hand sewn method only in that in the former both strokes of the needle pierce the canvas, while in the hand sewn method the needle engages only the lining and the cloth, the canvas having been previously stitched to the cloth.

It is doubtful whether this difference in the plaintiff's method (as contrasted with the well known hand method long in use), *is more than the mere functioning of the machine itself, and therefore not patentable as a process or product patent*. Chisholm-Ryder Co., Inc., v. Buck (D. C.) 1 F. Supp. 268; Id. (C. C. A.) 65 F.(2d) 735 (C. C. A. 4); Demco v. Doughnut Mach. Corp., 62 F. (2d) 23 (C. C. A. 4); Matteawan Mfg. Co. v. Emmons Bros. Co., 253 F. 372, 374, 375 (C. C. A. 1). But if we put aside this consideration it still results, in my opinion, that the slight change or improvement, if it can be called such, in the art, thus disclosed, does not rise to the dignity of patentable invention. What was said by the Court of Appeals for the Second Circuit in Rosenberg v. Carr Fastener Co., 51 F.(2d) 1014, 1019, is here applicable: "Such trivial modifications of a process or product otherwise unpatentable do not show invention. Very recent decisions of the Supreme Court indicate that a substantial step beyond the prior art must be taken in order to support a valid patent. Here the advance over the invention of 1913, if it be thought to have occurred, was altogether too slight and obvious." The Court cited De Forest Radio Co. v. General Elec. Co., 283 U. S. 664, 51 S. Ct. 563, 75 L. Ed. 1339; Carbice Corp. v. Am. Pats. Dev. Corp., 283 U. S. 27, 420, 51 S. Ct. 334, 496, 75 L. Ed. 819, 1153; American Fruit Growers, Inc., v. Brogdex Co., 283 U. S. 1, 51 S. Ct. 328, 75 L. Ed. 801; Smith v. Springdale Amusement Park, Ltd., 283 U. S. 121, 51 S. Ct. 368, 75 L. Ed. 878. See also the later cases, Permutit Co. v. Graver Corp., 284 U. S. 52, 56, 60, 52 S. Ct. 53, 76 L. Ed. 163; Electric Cable Co. v. Edison Co., 292 U. S. 69, 79, 54 S. Ct. 586, 78

L. Ed. 1131. The principle was fully stated in the earlier case of Atlantic Works v. Brady, 107 U. S. 192, 200, 2 S. Ct. 225, 231, 27 L. Ed. 438, where the Court by Mr. Justice Bradley, said: "The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every trifling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention. It creates a class of speculative schemers who make it their business to watch the advancing wave of improvement, and gather its foam in the form of patented monopolies, which enable them to lay a heavy tax upon the industry of the country, without contributing anything to the real advancement of the art. It embarrasses the honest pursuit of business with fears and apprehensions of concealed liens and unknown liabilities to lawsuits and vexatious accountings for profits made in good faith."

The contention of plaintiff's counsel is stated thus: "Plaintiff admits that it is old to make a waist band lining consisting of a cloth layer (top of trouser), a stiffener and a lining. Plaintiff also admits that it is old to stitch the three layers together by straight or zig zag stitches. Plaintiff, however, contends that it was new with the patentee to arrange the layers as called for by claim 4 and stitch them together with a zig zag stitch as also set forth in claim 4. In other words, plaintiff contends that claim 4 covers a new combination of old elements." But no new and useful result was obtained, other than imitating hand sewing by the zig zag machine stitch. At most, plaintiff's method would seem to be nothing more than a mere combination or aggregation of a number of old elements which produce no new result. Victor Cooler Door Co. v. Jamison, etc., Co., 44 F.(2d) 288 (C. C. A. 4); Doughnut Mach. Corp. v. Joe-Lowe Corp., 67 F.(2d) 135, 137 (C. C. A. 4); Harmon Paper Co. v. Prager, 287 F. 841, 844 (C. C. A. 2).

Plaintiff claims certain incidental advantages resulting from its method, such as large production at minimum cost, better wearing qualities, and better appearance.

So far as quantity production is concerned, this is obviously attributable to the machine described in the patent for the application of the method, rather than to the method which is attempted to be patented. As to the wearing qualities, it is not satisfactorily shown there is any advantage over the method of hand sewing. And as to the resulting similitude to the hand sewn method by the use of the machine, the device is not patentable. Harmon Paper Co. v. Prager, 287 F. 841, 844 (C. C. A. 2); Matteawan Mfg. Co. v. Emmons Bros. Co., 253 F. 372, 374, 375 (C. C. A. 1).

The utility of the plaintiff's method, as compared with prior methods, is not obvious. The peculiar application of the zig zag stitch which, as has been shown, is the sole patentable difference, has the resulting simulation of the hand sewn garment; but it makes no better garment either in appearance or in wear; and indeed would seem to have little advantage over other forms of stitching which might well be used for the same finishing purpose. The resulting similitude to the effect of manual sewing does not present the utility required by the Code (35 USCA § 31). It is argued that the defendant may not dispute the utility of a method which it uses. But the answer is that what the defendant does is to use a machine which he purchased before the issuance of the patent, which is the same machine used by the defendant and others generally in the trade long prior thereto, with some added attachments not patented. It is the function of this machine, especially in its convenient feeding arrangement, that affords the utility of which the defendant has availed itself.

 It is appreciated, of course, that the grant of the patent carries with it the presumption of its validity. Gulf Smokeless Coal Co. v. Sutton, 35 F.(2d) 433 (C. C. A. 4); Chisholm-Ryder Co. v. Buck (D. C.) 1 F. Supp. 268, 278. The weight of this presumption varies with the circumstances of the case. Where the file wrapper shows that prior relevant patents have been carefully considered, the presumption is ordinarily to be considered as strengthened. In this case the defendant has put in evidence numerous patents from an obviously crowded field to show anticipation. It may fairly be said that the more important of these prior references were considered in this case in the Patent Office and, as has already been pointed out, the patentable difference finally allowed was placed on an extremely narrow

ground. And I have been unable to reach the conclusion that so narrowed the difference is sufficiently substantial to validate the patent in view of the recent Supreme Court decisions above cited. It is also argued for the plaintiff that acceptance of licenses by numerous manufacturers of trousers (that is to say, commercial success) should be given important consideration in weighing the validity of the patent. But commercial success of itself is an unsafe criterion in determining patentability. McClain v. Ortmayer, 141 U. S. 419, 428, 12 S. Ct. 76, 35 L. Ed. 800; Eskimo Pie Corp. v. Levous, 35 F.(2d) 120, 122 (C. C. A. 3). And in this case there is the contervailing argument that the license fee exacted by the plaintiff is small in comparison with the cost of patent litigation.

 But even if the patent could otherwise be sustained, I think it must fail in this case by reason of the defense based on prior use by the defendant. The evidence is satisfactory and convincing that the defendant in its business as early as 1924 and more than two years prior to the application for the patent sued on, used or applied the zig zag machine stitch in the manufacture of waist bands of trousers in substantially the same way now claimed as an invention by Rod. This is established by four witnesses, including the individual defendant in this case, who is the chief owner of the corporate defendant, and by three employes, one the machinery superintendent of the defendants, and two wage employes who were operators in the defendants' factory. The time, place and circumstances are definitely fixed. The machine that was used had been in use by the defendant as early as 1913 and is the same kind of machine now used by the defendant with the exception of some added attachments consisting principally of an improvement in the form of the "folder" (an instrument long well known in the trade) for the purpose of feeding the material to the needles of the sewing machine, and which contributed in no way to the peculiar characteristic of the zig zag stitch. And it is definitely stated by at least two of these witnesses that the zig zag stitch was applied to the materials in the particular way which is now claimed as the invention of the patent, that is, one stroke of the needle engaging all three parts of the fabric and the alternate stroke engaging only two. It is true that their testimony is not corroborated by production of any garments as exhibits illustrating this early use; but the machine

which made the zig zag stitch was produced. It is recognized that a defense of this character to prevail must be supported by clear and satisfactory proof, (Eibel Co. v. Paper Co., 261 U. S. 45, 60, 43 S. Ct. 322, 67 L. Ed. 523; Barbed Wire Patent Case, 143 U. S. 275, 284, 12 S. Ct. 443, 36 L. Ed. 154) but my conclusion on the facts is that the proof in this case meets the test. The witnesses are obviously interested in the result to varying degrees; but they are uncontradicted and not otherwise impeached and the relatively small license fee demanded by the plaintiff would not seem under the circumstances to constitute such a measure of interest as to justify rejection of the defendants' testimony. Furthermore, the nature of the subject matter, in view of the well shown prior art, is not such as to suggest in any way the improbability of the defendants' prior use.

It was at one time held in the First Circuit (Emerson & Norris Co. v. Simpson Bros. Corp., 202 F. 747, 750) that to support the defense of prior use "something more than oral testimony, even of the highest character, is required where there has been a considerable lapse of time"; but this rigid rule seems to have gone beyond the requirement in such cases as expressed by the Supreme Court, and was modified in a recent opinion in that Circuit. United Kingdom Optical Co. v. American Optical Co., 68 F. (2d) 637, 639 (C. C. A. 1). In other Circuits, including this, all that is required is that the proof must be clear and satisfactory, and convincing, and that each case must be decided on its own facts. Virginia-Carolina Peanut Co., Inc., v. Benthall Machine Co. Inc., 241 F. 89, 97 (C. C. A. 4); Sipp Elec. & Machine Co. v. Atwood-Morrison Co., 142 F. 149, 153 (C. C. A. 3) by Judge Gray;' Haggerty v. Rawlings Mfg. Co., 14 F.(2d) 928, 929 (C. C. A. 8); Kaser Process Pie Co. v. Pie Bakeries, 50 F.(2d) 414, 415 (D. C. N. D. Ill.); Crone v. John J. Gibson Co., 247 F. 503, 506 (C. C. A. 2).

It is contended by plaintiff's counsel that the defendants' prior use was substantially different in one respect from the plaintiff's present method. Thus it is said that in the defendants' operation in 1924, there was a preliminary operation whereby the three (or at least two of the) materials were first stitched together before the application of the peculiar zig zag stitch to form the edging of the garment, and that the omission of this step in the process may constitute patentable invention (Lawther v. Hamilton, 124 U. S. 1, 8 S. Ct. 342, 31 L. Ed. 325); it being further said for the plaintiff's method that the patent contemplates the feeding of the three separate materials, unattached to each other, to the machine sewing by the zig zag method, whereby in one operation all three layers of the material are sewn together and the edging of the garment thus formed. But the difference is not substantial because the defendants' preliminary operation had no relation to the function of the zig zag stitch in the formation of the edging and at most it was merely a convenient method of presenting the materials to the stitching of the machine. And the present general practice in the trade, as the testimony shows, is that the manufacturer purchases the lining and the canvas already united by stitching in the form most suitable for presentation with the cloth to the stitching machine. It is to be noted from Figure 7 of the drawings of the plaintiff's patent that what is contemplated is the feeding of the canvas and lining separately to the machine along with the strip of cloth for the waist band, but in actual practice this has been departed from by reason of the simpler commercial method of obtaining the united canvas and lining in already prepared form. In this respect the plaintiff seems to be confronted with the dilemma that if the defendants' prior use was materially different from the plaintiff's method, then there would be resulting non-infringement in the defendants' present use. I conclude that the suggested difference is unsubstantial and that the defense of prior use is satisfactorily established.

It results that the plaintiff's bill must be dismissed with taxable court costs allowed to the defendants. Counsel may prepare and submit the appropriate decree. I assume that the findings of fact and conclusions of law contained in this opinion will constitute sufficient compliance with Equity Rule 70½ (28 USCA § 723), but if more specific and detailed findings are desired by the parties, counsel may submit them, consistent herewith, for consideration.