## TUMBLER et al. v. BALTIMORE PAINT & COLOR WORKS, Inc., et al.
### No. 2296.

District Court, D. Maryland.
June 11, 1935.

Simon E. Sobeloff, of Baltimore, Md., and Samuel Ostrolenk and Asher Blum, both of New York City, for plaintiff.

Harry O. Levin, of Baltimore, Md., and Herbert Jacobi, of Washington, D. C., for defendant.

CHESNUT, District Judge.

This case presents the usual type of equity suit for an injunction against patent infringement and for accounting for profits and damages. The patent in suit is United States Patent No. 1,969,387 issued August 7, 1934, on application dated September 13, 1929. It is a chemical patent for a combination of ingredients constituting a polish, primarily designed for restoring lustre to automobile bodies, but also to furniture and other subjects having coated surfaces of paint, enamel, varnish or lacquer. The essential feature of the preferred formula is a combination of "pale blown castor oil" (or cold air blown castor oil) with a mineral oil, and other less im-

rtant substances, in a combination, an important characteristic of which is the immiscibility of the castor oil with the mineral oil, both dispersed and held in suspension in an emulsified form in water. The appearance of the preparation is that of a creamy or milky liquid. It is claimed for it commercially that it is much superior to other somewhat similar types of liquid polishes; and in the specifications of the patent it is contrasted with and said to be a great improvement upon liquid polishes compounded with a base of sulphonated vegetable oils, such as castor, cotton seed and linseed oils, which are said to lack such lustre, and do not clean properly, are greasy and readily settle out (that is, do not long remain in an emulsified form).

The patent was applied for by Joseph A. Tumbler, and assigned to his firm, the plaintiffs in this case. They have been making and selling the preparation (with some added minor improvements) since the middle of October, 1927. It constitutes their principal business which has grown to fairly substantial proportions and is nearly nation-wide. They are residents of Baltimore.

The defendant corporation is primarily engaged, in Baltimore, in the business of making and selling paints and varnishes, including also, to a minor extent, various types of polishes. Since about January 1, 1928, they have also been making and selling a polish, first under the name of Royal Flush and later under the name of KarTex, which, it is alleged, constitutes an infringement of the plaintiffs' patent.

The defenses to the suit are:

1. Non-infringement and

2. Invalidity of the patent by reason of (a) want or lack of invention; (b) aggregation of old well known ingredients; (c) anticipation; (d) fatally defective specifications and claims, that is non compliance with Rev. St. § 4888, as amended (35 US CA § 33); (e) prior knowledge and use by the defendant corporation; (f) prior public use by the plaintiff, Tumbler; and (g) marking of plaintiffs' product with the "Waring" patent number.

*Infringement:* The testimony in the case satisfies me that the defendants' product, made and sold since the issuance of the plaintiffs' patent, infringes it. An analysis of the defendants' polish made by competent local analytical chemists shows that it contains by volume: pale blown castor oil 8.1; mineral oil 21; petroleum spir-

its 16; orthodichlorbenzol 2.0; oleic acid (free) 1.1; oleic acid (combined) 1.5; water 50.3; sodium hydroxide (caustic soda) 0.2 grams. This is substantially the plaintiffs' formula covered by at least some of the patent claims.

It is the defendants' contention that the constituents of its polish are not identical with all of those contained in the plaintiffs' preparation and covered by the patent claims, and particularly that the defendant has never used orthodichlorbenzol, ammonia and petroleum spirits subsequent to the date defendant corporation was served with notice of infringement; and that in lieu of these ingredients they have used toluol, lux soap chips, and kerosene. The weight of the expert testimony, however, convinces me that these substitutes, if in fact so used by the defendants, are substantial equivalents for minor ingredients of the plaintiffs' formula.

*Validity of the Plaintiffs' Patent:* The more important and difficult question in the case is the validity of the plaintiffs' patent, which is attacked on the several grounds above enumerated. Some of these can be briefly disposed of. With respect to alleged prior knowledge and use by the defendant corporation, and prior public use by the plaintiff and others, I do not find that these defenses are made out by the testimony, although a considerable amount of evidence was taken in an effort to establish them. The facts as I find them are that Tumbler, with technical education as a chemical engineer, was experimenting in the summer of 1927 in an effort to produce an improved and satisfactory polish, in the course of which it occurred to him to try the use of pale or cold blown castor oil as the principal ingredient of a polish, by reason of its well known characteristic of being a heavy or viscous oil. By August 10, 1927, he had substantially perfected the formula, and thereafter began to make the preparation, but the weight of the evidence is that it was not publicly sold until some time in October of 1927, thus within two years prior to the patent application. It is said that when the product was put upon the market it promptly became popular and, inferentially, probably promptly became known as a new and satisfactory polish to other people in the same line of business in Baltimore. The defendants assert also that their production manager was likewise experimenting to produce a more satisfactory automobile body

polish during 1927 and it appears that some time in September of 1927 a quantity of Baker Pale 4 Oil (pale blown castor oil) was sent as a sample shipment to the defendants. In the latter part of December 1927, the defendants put on the market their Royal Flush Polish which contained as its substantial element the Baker No. 4 oil. The formula for this is said to have been first made up under date of December 7, 1927. The labels for the containers for this product were apparently ordered as early as October 1927. The definite formula for the defendants' early manufacture of the polish as determined by analytical chemists consulted by the defendants is dated January 18, 1928. It varied somewhat from the plaintiff's analysis of the defendants' current product, but contained the essential combination of pale blown castor and mineral oil. The defense of prior use requires clear and convincing evidence to support it. It is lacking here. Eibel Co. v. Paper Co., 261 U. S. 45, 60, 43 S. Ct. 322, 67 L. Ed. 523; Virginia-Carolina Peanut Co. v. Benthall Machine Co., 241 F. 89, 97 (C. C. A. 4).

■ *Marking Plaintiffs' Product with "Waring" Patent Number:* The plaintiffs' product is marked with two patent numbers —1,487,632 and 1,969,387. The latter is the patent in suit. The former is the Waring patent (March 18, 1924). During the prosecution of the plaintiffs' patent in the Patent Office the Waring Patent was on one or more occasions cited against the plaintiffs' application by the Examiner and argumentative distinction therefrom was finally successful after various amendments of claims were made by the applicant. Subsequently, on advice of counsel, plaintiffs acquired the Waring Patent because it was thought that some of the claims might be broad enough to cause the plaintiffs litigation. It is now argued by the defendants that the result is that the plaintiffs' patent is invalid in that their contentions before the Patent Office were obviously unsound, or else they are guilty of flagrant misbranding and thus come before the court with unclean hands. Assuming the plaintiffs' patent is in law valid, the defense as to misbranding is unsound. Rubenstein v. Slobotkin (D. C.) 33 F.(2d) 603.

■ *Alleged Insufficiency of Patent Specifications:* United States Code, title 35, § 33 (35 USCA § 33) requires the patent applicant to file in the Patent Office a written description of his invention and the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and he must point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. It is contended that the requirements of the statute have not been substantially complied with by the patentee, particularly in that the reference to pale blown or cold blown castor oil is too general. In this connection it is said that the product may vary greatly in principles and characteristics, which depend upon the duration of the blowing (oxidation) process and the temperature and pressure under which the operation occurs. See Lewkowitsch, Chemical Technology and Analysis of Oils, Fats and Waxes, p. 396. However, on this point I accept as more satisfactory the views of the plaintiffs' experts to the effect that, bearing in mind the nature of the subject matter, the description of pale blown castor oil, or cold air blown castor oil, is reasonably sufficient to apprise one familiar with the art as to what is meant by the patent and how the product can be satisfactorily made from the information given. United States Ind. Chem. Co. v. Theroz Co., 25 F.(2d) 387, 392 (C. C. A. 4); Seabury & Johnson v. Am Ende, 152 U. S. 561, 567, 14 S. Ct. 683, 38 L. Ed. 553. It may also be noted that in several of the 20 claims, as for instance, claims Nos. 2, 4, and 8, it is indicated that the blowing of the castor oil is to be at temperature and pressure which will result in the oil being retained immiscible in the lubricant, both being dispersed in water. And in claim No. 20, it is indicated that the ratio of the castor oil to the lubricant by volume is to be approximately one to three.

*Lack of Invention, etc.:* The more important question in the case is whether the patent involves invention, or is a mere aggregation of old and well known ingredients, or has been anticipated by the prior art. These objections to the validity of the patent are well summarized in the testimony of the defendants' expert Spector, and are based principally on the following prior patents: Bender No. 1,759,- 182, May 20, 1930; application filed Oct. 22, 1924, particularly lines 52 to 98 inclusive; Dewey No. 1,737,222, and 3; Waring, the

basic patent, lines 75 to 97, p. 1 of the specifications, which it is said show the first emulsion of vegetable oil and mineral oil in water as a polish; Wade and Zimmerman, No. 1,602,169; Hurst No. 1,433,-887 (not cited by the Examiner though referred to by counsel in the file wrapper). But a consideration of his testimony and an examination of the patents referred to does not convince me that the plaintiffs' patent is wanting in invention. A careful examination of the file wrapper is instructive with regard to the scope of the patent claims as finally issued. The original application contained claims much broader and more general than those finally allowed. Apparently only one claim of those originally requested survived, and became Claim No. 1 of the patent which reads: "A polishing and cleaning preparation comprising 'pale blown' castor oil, mineral oil, ammonia, orthodichlorbenzol, water and petroleum spirit." The course of the case in the Patent Office however brought out the point that an important characteristic of the plaintiffs' invention consisted in the immiscibility of the castor oil with the mineral oil and that the result best obtained was with that form of castor oil known as "pale blown" or "cold blown" castor oil. The result was that the claims as allowed all involve as an essential feature of the plaintiffs' preparation this form of castor oil, and are, of course, limited thereto. In addition to Claim No. 1, plaintiffs also particularly rely on Claims 16 and 20. Claim 16 reads as follows: "A polishing emulsion containing water, a lubricant, air blown castor oil undissolved, and in suspension in the lubricant, the castor oil and lubricant being emulsified in the water." And Claim No. 20 reads: "An emulsified preparation for polishing comprising water, substantially unsaponified oxidized castor oil, a lubricating oil, the ratio of castor oil to the lubricant by volume being approximately one to three, and the castor oil and lubricating oil being immiscible, all of the products being immiscible in each other and all of the products being in an emulsion in the water." And in response to the defendants' contention that its preparation does not infringe by reason of certain literal variations from these three claims, the plaintiffs point out that infringement can clearly be shown of the much more general claims which more clearly do cover the defendants' product, as for instance, Claim No. 8, which reads: "An undissolved emul-

sified preparation for polish comprising water, a lubricant, unsaponified castor oil blown in a temperature and pressure at which the castor oil is retained immiscible in the lubricant, and water soluble soap emulsifier, said castor oil and said oil being dispersed in said water."

The plaintiffs do not contend that it was new to make a polish containing castor oil and mineral oil but point out that such prior use of castor oil was only in the *sulphonated* form covered by the Hurst patent, and illustrated by the commercial product introduced into the evidence known as "Renol." Nor is it disputed by the plaintiffs that the use of. blown castor oil for other products than polishes was known prior to Tumbler's invention. Thus Wade (1927) shows the use of castor oil *blown* at *high temperatures* for *lacquers;* and Dodge (1923) shows it for use in *lubricating* oils for machinery. Nor was the feature of immiscibility of castor oil and mineral oil previously unknown under certain conditions. It was mentioned by Bender (1930, application filed 1924) in connection with medicinal laxatives. But it is contended by the plaintiffs, and the evidence seems to bear them out in this respect, that Tumbler was the first to use the *combination* of mineral oil with *pale blown* (that is, blown at comparatively cold or low temperatures) castor oil in an immiscible combination, both dispersed and suspended in emulsified form in water, as the principal constituents for a *liquid polish.* The prior use of oxidized castor oil had been limited to such substances as lubricating oils for machinery, and lacquers. which, of course, serve quite a different purpose from that of a polish, the function of which is to repair the ravages of the elements on lacquer work. As applied to automobile bodies it is said by the plaintiffs, in lines 25, etc., of the specifications, that the lustre of the body finish is impaired by the chemical action of atmospheric conditions met with in ordinary use of the automobile. This dulling of the lustre is caused by an accumulation of what is called the "traffic film." Washing with soap and water will tend to remove the dust and some oil and grease but no washing can remove the dull film which is on the surface. It is the function of the polish to remove this film without injury to the natural finish and it is claimed that it will be impervious to water and not affected by atmospheric conditions. The apparent theory of this restorative effect is interest-

ingly told in the testimony of LaBrie, a witness for the plaintiffs in rebuttal. Shortly, what is said is that the mineral oil which acts principally as a lubricant, substantially disappears when the polish is lightly rubbed on the lacquered surface of the automobile, leaving the castor oil to feed the pores of the lacquer; and the highly refractive quality of the pale blown castor oil heightens the lustre of the finish. Of itself the theory is not new as it is expressed in the Waring Patent, lines 77 to 85; but the product made under the Waring Patent is, however, unlike the plaintiffs' preparation in various ways.

The ideal for a liquid automobile body polish (and what was sought by Tumbler) was a preparation that (1) would remove the worst of the "traffic film," (2) repair the ravages of the atmospheric conditions on the lacquer, and thus restore its lustre; and (3) which could be easily, quickly and economically applied. In searching for the answer to the problem Tumbler hit upon cold blown castor oil, in certain proportions with a mineral oil, and other minor ingredients, which were capable of developing the most effective properties of the castor oil, for the particular purpose. The problem, and its solution, is reviewed and explained at length in the professional discussion contained in the letter of October 21, 1933, from the applicant for the patent, to be found in the file wrapper. It is there said: "The heart of the Tumbler invention is the discovery of a method of easily applying a thin, uniform film of *blown castor oil* to a finish. This consists in emulsifying the castor oil together with about three times its volume of a light petroleum oil, with which it is immiscible, in water. Applied to the surface with a cloth the petroleum oil lubricates the globules of castor oil and permits the cloth to glide easily over the surface, while the castor oil adheres to the finish for which it has so much affinity. The presence of the mineral oil prevents the castor oil from adhering to the fibres of the cloth. If it were not used it would be very difficult to polish the surface. The castor oil would pull fibres from the cloth, and become streaky. Due to the much lower viscosity of the mineral oil film than that of the castor oil, the final result is freedom from tackiness."

The testimony as a whole is quite convincing that the plaintiffs' product has met with a decided commercial success. The plaintiffs were initially substantially without capital to exploit their product but in the few years that it has been on the market they have been successful in giving it wide distribution. The story is told by the gross volume of sales which for 1928 was $18,000; for 1929, $42,000; for 1930, $179,000; for 1931, $211,000; for 1932, $160,000; for 1933, $139,000; and for 1934, $133,000. About 10% of their sales represent exports. This rapid and steady growth apparently without substantial national advertising from 1928 to 1931 is conspicuous of commercial success and of the superiority of the plaintiffs' product over prior types of liquid polishes. The relative decline in the gross volume during 1932, 1933 and 1934 is attributed by the plaintiffs to competing and infringing products, and the testimony shows that some five or six, at least, of these are now well known in the market, all using the pale blown castor oil as an essential ingredient. It may also be noted, however, as the testimony shows, that in recent years restoration of the finish of automobile bodies is much more satisfactorily accomplished by the use of the process of Simonizing and the use of wax instead of liquid polish. The latter process is much more durable though more costly. Nevertheless by reason of cheapness of application there is substantial demand for the liquid polish. For comparison, it is said that the cost of Simonizing is $8 to $10 a car, and the effect lasts for several months or longer if supplemented from time to time by the use of a wax polish; while a car may be polished by the use of the plaintiffs' product at a cost of approximately $1 with results lasting satisfactorily for possibly a week or more. A 16-oz. bottle of the plaintiffs' polish now sells at retail for 85 cents and is said to be sufficient to polish an automobile four or five times, and the operation, without undue labor, may be completed in about two hours on a medium sized car.

Further tending to support the validity of the patent is the presumption arising from careful examination over a period of several years given to the application by the Examiners in the Patent Office. All the prior patents now cited against it were cited and considered by the Examiners, with the exception that the Hurst patent was not specifically cited although it seems to have been referred to.

■ The most serious objection to the patent seems to lie in the question as to

188

whether the substitution of pale blown castor oil for other forms of vegetable oils such as linseed oil, or sulphonated castor oil, can properly constitute invention. The combination is new and the result does seem to have been a product of marked superiority over similar liquid polishes, and with qualities for the particular utility not previously possessed by them. A review of the cases dealing with chemical patents indicates no substantial difference in the applicable law as to the question of invention, from that applied to mechanical devices. It is the combination of the several ingredients that is patentable. Whether the combination be of new or old elements or partly one and partly the other, the result is patentable if a new and useful product is thereby obtained. Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 443, 31 S. Ct. 444, 55 L. Ed. 527; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 40 F.(2d) 910 (C. C. A. 4). Some recent cases in which these principles have been applied and patents for chemical combinations sustained are, Theroz Co. v. United States Industrial Chemical Co., Inc. (D. C.) 14 F.(2d) 629, affirmed 25 F.(2d) 387 (C. C. A. 4); Donner v. Sheer Pharm. Corp. 64 F.(2d) 217 (C. C. A. 8); E. I. Du Pont Nemours & Co. v. Glidden Co., 67 F.(2d) 392 (C. C. A. 2).

The principles applied in these cases seem to justify upholding the patent in suit. The improvement accomplished by the plaintiffs was not so trivial as that condemned in Rosenberg v. Carr Fastener Co. (C. C. A.) 51 F.(2d) 1014, 1019, and by this Court in Rokap Corp. v. Lamm Bros. (D. C.) 10 F. Supp. 219. Nor in my opinion is the plaintiffs' combination a mere aggregation of old and well known ingredients as was found to be the case in Victor Cooler Door Co., Inc., v. Jamison Cold Storage Door Co., 44 F.(2d) 288 (C. C. A. 4) and Doughnut Machine Co. v. Joe-Lowe Corporation, 67 F.(2d) 135, 137 (C. C. A. 4).

■ Probably the Waring Patent No. 1,487,637 in connection with Wade and Zimmerman No. 1,627,069 is the most serious citation against the plaintiffs' on the point of anticipation. Waring used a vegetable oil (in which class castor oil falls) for a liquid polish, and Wade and Zimmerman used castor oil (blown at high temperatures) for improved enamels. It is arguable that the manufacture of enamels is an analogous art to that of polishes, and that substitution of pale blown castor oil for other vegetable oils in liquid polishes is not really invention. But it must be admitted that Tumbler was the first to use his particular combination for a liquid polish, which is a supplement to rather than a substitute for lacquer work; and the testimony is convincing that his result has proven useful and has met with substantial commercial success which has evoked much competition from others seeking the benefit of his improvement. Perhaps his invention cannot be described as great but it seems to be distinct. United Chromium, Inc., v. Int. Silver Co., 60 F.(2d) 913, 917 (C. C. A. 2). And while the question of invention may be balanced with some doubt, I conclude that the prima facie presumption of patentability from the grant of the patent, in connection with the element of commercial success, is sufficient to establish the validity of the patent. Artcraft Silk Hosiery Mills, Inc., v. Gotham Silk Hosiery Co., Inc. (C. C. A.) 72 F.(2d) 47, 48; Donner v. Sheer Pharm. Corp., 64 F.(2d) 217 (C. C. A. 8); Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 495, 23 L. Ed. 952; Diamond Tire Co. v. Consol. Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Gulf Smokeless Coal Co. v. Sutton, Steele & Steele, 35 F.(2d) 433, 437 (C. C. A. 4); Chisholm-Ryder Co. v. Buck (D. C.) 1 F. Supp. 268, affirmed (C. C. A.) 65 F.(2d) 735; Walker on Patents (6th Ed.) § 78.

The findings of fact and conclusions of law contained in this opinion will constitute, I think, substantial compliance with Equity Rule 70½ (28 USCA following section 723). Counsel may in due course submit a decree finding the validity of those claims of the patent in suit herein specifically mentioned and that the defendant has infringed them. If desired a reference can be made for an accounting of profits and damages. It is understood that by agreement of counsel the question of the liability of the individual defendants was to be postponed.